## Frame *against* Stewart.

A testator having in his life given certain parts of his real estate to his children to be cleared and improved by them, retained a part himself; which together with his farming utensils, stock, &c., he devised to his wife for the purpose of maintaining herself and his minor children, until the youngest should attain full age, when his wife was to have the personal estate absolutely, and " his real estate to be then equally divided amongst all his living children, or their lawful heirs of any, who may die before that time. leaving such, according to quantity and quality, allowing each child having the part they may have improved upon, they improving where I have ordered, so as to have the benefit of their own labours :" Held, that E., one of the children, who had occupied part and improved it in his father's lifetime, had an estate in fee-simple.

ERROR to the common pleas of *Crawford* county.

This was an action of ejectment by Adam Stewart against Margaret Frame and others, in which the parties agreed to the following special verdict.

" Thomas Frame, the elder, being seized of a tract of land, of which the premises for which this ejectment is brought is part, by his last will and testament, dated the 7th of May 1813, devised as follows: (*pro ut* the will.) He *died soon after having children, viz.,* Edward, James, Thomas, (dead and unmarried) Abner, John, Margaret, (married to John M'Queen,) Mary Ann, (married to Samuel M'Dowell,) Martha, (married to Matthew Ralston,) Sally, (married to James Angelo,) Elizabeth, (married to David Hoover,) and Alice, (married to Samuel Hoover.)"

" Edward Frame, son of said Thomas, had, in the lifetime of the father, and by his directions, improved, built, and lived on the land mentioned in this ejectment, and after his death his widow and children continued to reside and improve thereon. Edward Frame died on the 3d of May 1824, having five children then alive, viz., Thomas, Zachariah, Alice, John, and Abner, (who died before his grandmother.")

" Mary Frame, the wife of Thomas, died the 16th of August 1827. Partition was made between the children and grandchildren of Thomas Frame, (*pro ut* the partition;) the part allotted to the children of Edward Frame was 45 acres, &c.; see No. 18, April term 1828."

" On the 5th day of February 1820, Edward Frame and Margaret,

v.—3 E

his wife, executed a mortgage to the plaintiff to secure a debt due to him, (*pro ut* the mortgage.) The question for the court to decide is, whether Edward Frame, the mortgagor, took such an estate under the will of his father, as would be liable after his death and the death of the widow of Thomas to the said mortgage, or whether his heirs are entitled to hold the land divested of the lien of the said mortgage. If the court decide in the affirmative, then judgment to be entered against Margaret Frame and the heirs of Edward, aforesaid, with costs. If in the negative, then judgment to be entered in favour of the defendants."

Will of Thomas Frame.

"Item, I give and bequeath unto my dear wife, Mary Frame, the use and occupation of my improvement whereon we now live, together with all my household furniture, stock, and crop, and farming utensils of every kind, she maintaining and educating my minor children thereout, until my youngest child shall, then living, be of lawful age, then to have the personal property at her own disposal of every kind, and my real estate to be then equally divided amongst all my living children or their lawful heirs, of any who may die before that time leaving such, according to quantity and quality, allowing each child having the part they may have improved upon, they improving where I have ordered, so as to have the benefit of their own labours. And it is my will and desire, that my said wife Mary, by every child in equal part shall be reasonably supported from that time, until her natural death, then decently buried. In like manner, it is my will and desire, that James M'Connell shall go on to build the barn according to our contract. What may be left of the debt coming from him or others, together with the stills and vessels, I allow to be applied to the payment of my just debts, burying expenses, &c., and if any be left to be applied towards putting a chimney in the new house, any repairs or improvements done to said house, I will allow to be paid by the persons getting said house, according to this, my last will, when my said wife Mary shall see cause to leave it or her death, and touching all the rest, residue and remainder of my estate, real and personal, of what kind or nature soever, the same may be in the county of Crawford, aforesaid, or elsewhere, I give and bequeath to my dear wife, Mary, during her natural life, and from and immediately after her decease, I give and deliver the same unto my eleven children, Margaret, Edward, James, Mary Ann, Martha, Sarah, Thomas, Abner, John, Elizabeth, and Ally, or the survivor or survivors of them, and the heirs of such survivor or survivors, equally to be divided between them. And lastly, I nominate and appoint my said wife and my son, James Frame, and Adam Stewart, Esq., to be the executors of this, my last will, hereby revoking all other wills, &c. Witness, &c., this 7th day of May 1813."

"Codicil. I, Thomas Frame, of, &c., do hereby make and publish this codicil to be added to my last will and testament, in manner

[Frame v. Stewart.]

following, to wit: I give and bequeath to my eldest daughter, Margaret Frame, (now Margaret M'Queen) the piece or parcel of land which I marked off to her, and which they have now in possession, the boundaries known to several persons, supposed to be about 40 acres, and this to be in lieu of her equal part, as mentioned in my foregoing will. I give it to her, and allow it to her without any further trouble, she paying the tax and bearing an equal share of the keeping of her mother, along with the rest of her brothers and sisters, after the division of my real estate; and lastly, it is my will, that my present codicil be annexed to and made part of my last will, &c. May 7th, 1813."

Mortgage of Edward Frame and wife to A. Stewart,

Is dated the 5th of February, 1820. Sets forth, that " Whereas, Edward Frame, in and by a certain obligation of same date was indebted to Adam Stewart, 174 dollars, conditioned for the payment of 87 dollars, on the 5th day of February 1821, with interest. The said Edward and wife, for the better securing the said debt of 87 dollars, did grant, bargain, and sell unto the said Adam Stewart, his heirs and assigns, all that the land he holds or is justly coming to him from his father's estate, in Fallowfield township, being the same land whereon his family now resides, lying on the west of land whereon Samuel M'Dowell now resides, supposed that it will contain between 40 and 50 acres, that is his share of his father's estate, aforesaid, which was left to him by will, dated the 7th day of May A. D. 1813, now in the register's office, as will appear. To have and to hold the same and the appurtenances, &c., to Adam Stewart, his heirs and assigns, for ever, provided that if the said Edward, his heirs, executors, administrators, &c., should pay the said sum of 87 dollars and interest, without defalcation, then this indenture and the estate granted to be null and void, &c. In witness, &c.      (Signed)      EDWARD FRAME,   [L. s.]
                                       MARGARET FRAME, [L. s.]"

The court below (Shippen, President,) rendered a judgment for the plaintiff.

*Huidekoper*, for plaintiff in error, cited Haines *v.* Witmer, 2 *Yeates* 400; Abbott *v.* Jenkins, 10 *Serg. & Rawle* 300; Smith *v.* Folwell, 1 *Binn.* 546.

*Riddle*, for defendant in error, cited Kinsey *v.* Lardner, 15 *Serg. & Rawle* 192; Barnes *v.* Provoost, 4 *Johns.* 61; Ray *v.* Enslin, 2 *Mass.* 554; James' claim, 1 *Dall.* 50; Robinson *v.* Adams, 4 *Dall.* 12; Cassell *v.* Cooke, 8 *Serg. & Rawle* 290; Nebinger *v.* Upp, 13 *Serg. & Rawle* 65; 4 *Rawle* 75.

The opinion of the Court was delivered by

KENNEDY, J.—Mr Fearne, in his treatise on contingent remain-

[Frame v. Stewart.]

ders and executory devises, page 167, says, " it sometimes happens, that a remainder is limited in words which seem to import a contingency, though in fact they mean no more, than would have been implied without them; or do not amount to a condition precedent, but only denote the time when the remainder is to vest in possession." In support of this proposition, he refers to the case of Boraston, 3 *Co.* 19; followed by Holcroft's case, *Moore* 486, and a series of others there mentioned; wherein it was held that the adverbs, "when" and "then" only expressed the time when the remainders should take effect in possession, and not when they should become vested. In all the cases cited by him, for the purpose of maintaining his position, there was an intermediate devise or disposition of the estate or of the rents and profits of it, either to a stranger or for the devisee's own benefit, till the time at which the devisee was to take the estate; and these cases appear to have been decided upon the ground, that the devise of the particular interest was to be considered as an *exception* only out of the devise of the absolute property, which was intended for the devisee.

The present case, however, is more favourable in this respect, to a vested interest, than those mentioned by Mr Fearne. For here it is perfectly manifest, that the testator intended that an estate should not only vest in Edward in interest, but likewise in possession immediately, upon his, the testator's decease; because, from the will and the case stated, it appears that the testator had eleven children; some of whom were of full age and the rest minors. That he owned a large tract of land, containing upwards of five hundred and forty acres; a considerable portion of which was unimproved; and that he, in his lifetime, and before the making of his will, had given to some of his children, who were of full age and capable of performing the task, and to Edward, among the number, certain parts of the land to be cleared and improved by them; while he continued to improve another part of it himself. This latter part, whereon he lived, together with the crop growing thereon, all his household furniture, stock and farming utensils, he gave to his wife, for the purpose of maintaining herself and his minor children until the youngest thereof should attain full age; when his wife was to have the personal property of every kind, at her own disposal; and his real estate to be then equally divided amongst his *living* children; *or their lawful heirs of any, who may die before that time, leaving such,* according to the quantity and quality, *allowing each child having the part they may have improved upon, they improving where I have ordered,* so as to *have the benefit of their own labours.*" This clause disposing of the real estate, may be fairly rendered thus; " my real estate to be then equally divided amongst all my children, then living, and their lawful issue of those who shall have died leaving such, according to quantity and quality, allowing to each child, at least as a part of his allotment, that part of the land, which he shall have improved according to my direction,

so that he shall have the benefit of his own labour." This may be considered a literal interpretation of the sentence, when reduced into grammatical form, with the exception of the words "lawful heirs," for which I have substituted the words "lawful issue;" because from the context, they cannot well be made to mean any thing else, certainly not lawful heirs in the full extent of the technical and legal sense of the terms; because the surviving children would in this latter sense, be the legal heirs of those dying without issue. But it is perfectly clear that the testator did not mean them, for they are embraced in the terms "living children" immediately before; and, therefore, the testator must have meant the lineal heirs or the issue of them who should happen to die before the time fixed for dividing the estate among the children had come around. And indeed it is not improbable, but the issue alone of deceased persons, may be thought by some of the more illiterate to be their only *lawful* heirs, in contradistinction to their collateral relatives, whom they consider merely heirs of grace or favour, when lineal relatives are wanting. It is only mistaking and substituting the term "lawful" for that of "lineal."

Edward, who mortgaged the land in question, was, as has been mentioned before, one of the children who attained his full age in the lifetime of the testator, and who, under the direction of the latter, had commenced improving it, and continued to do so, not only till the death of the testator, but until his own death. According to the express terms of the will, he was therefore to have the full benefit of his labour by obtaining the part so improved by him. It is clear that, if this part of the land was not given to Edward, by the will to be possessed and enjoyed by him from :he time of the death of the testator, that it was given to no one; for the particular devise to the widow certainly did not embrace it; that was restricted exclusively to the improvement made by the testator himself, nor is there any other devise that possibly can include it; and as it was clearly the intention of the testator to dispose of the whole of his estate, so as to take effect in possession immediately upon his death; there is then scarcely the shadow of a pretence for saying, that the estate or interest, given by the will to Edward, was contingent; because that would conflict with the particular, as well as the general intent of the testator. The will is drawn up in terms, which, according to a literal interpretation of them, would render it somewhat confused, if not almost contradictory. The scrivener, from ignorance and incapacity, to express on paper the intention of the testator in an intelligible manner, and from a desire, as it would seem, at the same time, to be very explicit, has created the only difficulty presented in the construction of the will. For had the word "living" which is prefixed to the word "children," and the alternative clause, "or their lawful heirs of any, who may die before that time, leaving such," been omitted, the devise would have been perfectly intelligible and would have

passed a vested fee-simple in the land to the children free of all doubt whatever. The devise would then have read thus; "I give and bequeath unto my dear wife, Mary Frame, the use and occupation of *my improvement* whereon we now live, together with all my household furniture, &c., she maintaining and educating my minor children thereout, until my youngest child then living shall be of lawful age; then to have the personal property of every kind at her own disposal; and my *real estate* to be then equally divided amongst all my children, according to the quantity and quality, allowing to each child, in his allotment, that part of the land, which he shall have improved according to my direction, so that he shall have the full benefit of his own labour." The words "real estate," used here, must be considered as expressive of the whole *quantum* of interest or estate, which the testator had in the land, and of his intention also, to pass it, whatever it might be, to his children, so that being seised of an estate in fee-simple, it passed thereby to them, without words of limitation. To attempt to give to the words and clause thus rejected, any force or effect at all, would either reduce the interest taken by Edward, under the will to a mere life estate, with a remainder over to his children; or otherwise to an estate tail; because I consider a contingent remainder to Edward in fee altogether out of the question; the authorities cited by Mr Fearne show most clearly, that it cannot be held to be such upon any established principle or rule of construction. And as to its being considered a life estate, or an estate tail, it is only by a strained implication, that it can be made out to be either; for there is not a word expressly limiting the devise to the children to an estate for life; nor yet to the heirs of their bodies. Neither are there any terms which seem to indicate that such was the intention of the testator; and to raise a limitation for either purpose, by mere implication, would be wrong, as it might make Edward a loser rather than a gainer by the devise, and thus militate against the clear intention of the testator; for a life estate might not be sufficient to remunerate him for his labour and expenses in improving the land; yet it cannot be questioned, but the testator intended that he should be fully compensated for so doing, by an ownership of the land, which might require the fee-simple, in order to make it sufficient for such purpose. The same argument exists against its being adjudged an estate tail; as also, the further argument, that it is apparent, from the whole tenor of the will, that the testator intended that, if Edward or any of the children should die seised of their respective portions of the land, leaving issue, that all such issue should inherit, as if their father had died seised of the fee-simple estate. We, therefore, think that Edward took a vested fee under the will and had a right to mortgage the land as he did.

Judgment affirmed.