## Womrath *et al.* *versus* McCormick.

1. A testator gave to his wife "*the net rents, income and interest of all*" his estate during life, "*for her own use ;*" he also directed that at her decease all his estate, except his homestead, should be "*valued and divided into as many parts, to be equal in value as near as may be*" as he should "*then have children living, the issue of any deceased child to represent their parents,*" and gave to each of his children and the issue of a deceased child, standing in place of their parent, one of the shares divided and designated as he directed. He directed that the homestead should not be divided until 1870, "*after which time,*" if his wife be then dead, it was to be divided amongst his living children and the issue of those dead, "*in the shares and in the way and manner*" directed as to his other estate. *Held*, that the remainders to the children were vested, to be enjoyed *in futuro*, and that a deed from the widow and children would convey a good title.

2. There is no contingency, from the possibility of the death of a child leaving issue, when partition was to be made; the word "issue" here defining the *quantity* of the estate.

3. In doubtful cases, the law requires the construction to be made in favour of vested remainders in preference to contingent, and indefeasible estates in preference to defeasible.

CERTIFICATE from the Court of *Nisi Prius.*

This was a proceeding in equity by Henrietta W. Womrath, Andrew K. Womrath, Frederick K. Womrath, Antoine M. L. Waters and Joseph T. Ford and Henrietta his wife in her right, against John McCormick, to compel the specific performance of a contract to purchase real estate.

[Womrath v. McCormick.]

George F. Womrath died seised in fee of a ground-rent of $400, out of a lot in Frankford. By his will, dated February 17th 1859, he gave to his wife, Henrietta W. Womrath, for her life, the house and lot on which he resided, $500, all his furniture, &c.

He further provided : " I give and bequeath to my said dear wife the net rents, income and interest of all my estate, real and personal, during all the term of her natural life, for her own use. But it is my desire that the surplus income of my said real and personal estate that shall remain from time to time, after the appropriation of whatsoever part thereof she may require or expend for her own use, shall be divided by her among our children, share and share alike. It is my will that upon the decease of my said dear wife, all my real and personal estate (with the exception of the homestead place aforesaid, in Frankford, whereon I now reside) shall be valued and divided into as many parts, to be equal in value as near as may be, as I shall then have children living, the issue of any deceased child to represent their respective parent or parents ; and each of such issue, if any, to be considered in the division as one part only ; which valuation shall be made by three competent and disinterested persons, who shall be nominated and appointed by the surviving executors of this my will, hereinafter named, and the shares so divided shall be drawn for in the manner the persons making such division shall direct, so as to designate a particular share or part of my estate for each child, and for the issue of any deceased child to whom the same shall fall, upon each drawing. And I give, devise and bequeath to each of my said surviving children, and the issue of any deceased children, such issue to stand respectively in the place of their parent, and to take together only the share· their respective parent, if living, would have taken, one equal share or part of all my said estate, real and· personal, divided, allotted and drawn for as aforesaid, to have and to hold their said respective shares to them respectively, and their respective heirs, executors, administrators and assigns for ever. It is my will that the place in Frankford on which I now reside, containing about nine acres, hereinbefore devised to my dear wife during her natural life, shall not (in the event of her decease prior to that time) be divided before the year of our Lord 1870, but shall, if my said dear wife die before then, be leased in the mean time by my surviving executors from year to year, for the benefit of my estate, after which time (my said dear wife being deceased) it may be divided among my children then living, and the issue of such of them as shall be deceased, unto whom I devise the same in the shares and in the way and manner hereinbefore mentioned in regard to my other estate, devised to and ordered to be divided 'among them.''

Charles D. Kenworthy was the owner of the lot out of which

[Womrath *v.* McCormick.]

the ground-rent issued. On the 1st of July 1864, he conveyed this lot to Henrietta W. Womrath, widow of George F. Womrath, and Frederick K. Womrath, Andrew K. Womrath, Antoine M. L. Waters and Henrietta J. Ford, children of said G. F. Womrath, " unto the said Henrietta W. Womrath for life, and after her death to the said Frederick K. Womrath, Andrew K. Womrath, Antoine M. L. Waters and Henrietta J. Ford" in fee, " subject, nevertheless, to the said yearly ground-rent of $400."

On the 1st of April 1865, the above widow and children entered into an agreement with McCormick for the sale of the above lot out of which the ground-rent issued for $5000, to be paid by McCormick " upon a good, sufficient and marketable title being made to him therefor." The complainants aver that they were seised, under the will, for life and in fee respectively of the ground-rent ;—that on the conveyance to them of the lot by Kenworthy the ground-rent was merged and extinguished ;—that they tendered to defendant a proper deed on the 17th of April ;— and that he refused to perform his part of the agreement, alleging that they could not make him a good title.

The defendant answered, admitting all the above facts, and further, " that I am and always have been ready" to perform the agreement on his part, but averred that the " plaintiffs cannot make a good and marketable title" to the lot.

The case was submitted on bill and answer. The court (Read, J.) dismissed the bill : this was assigned for error.

*C. S. Pancoast,* for appellant.—The complainants allege that the devise is an estate for life in the widow and a vested estate in tail in the children, enlarged into a fee simple by the Act of 1855.

Two periods are fixed for the division of the residue ; one, the termination of the particular estate; the other, the sale of the homestead. The postponement is for a special purpose connected with the estate, not to suspend the vesting of the interests. The postponement of the division of the homestead was not intended to change the parties to take or their interests, for they take in the same manner as the other part of the residue. The expressions, " as I shall have children living," and " my said surviving children," import no other contingency than always exists as to the immediate remainder man ; his outliving the particular tenant for the estate to vest in possession : Smith on Ex. Int., §§ 180, 346, 517; Fearne, p. 241 ; Boraston's Case, 3 Rep. 19 ; Fortescue *v.* Abbott, Pollex. 479 ; Webb *v.* Hearing, Cro. Jac. 415 ; Manderson *v.* Lukens, 11 Harris 31 ; Guthrie's Appeal, 1 Wright 11 ; Richards *v.* Lady Bergavenny, 2 Vern. 324 ; Elton *v.* Eason, 19 Ves. 73 ; Southerly *v.* Stonehouse, 2 Ves. Sr. 610.

A remainder is to be considered vested rather than contingent,

if words can be so construed : Minning *v.* Batdorf, 5 Barr 505 ; Chew's Appeal, 1 Wright 23 ; Letchworth's Appeal, 6 Casey 175. In McKee *v.* McKinley, 9 Id. 92, it was not suggested that the words " if any surviving" made the remainder contingent. In Radcliff *v.* Bagshaw, 6 Term R. 512, the taking of the heirs after the life estate was made dependent on their ancestor outliving the life tenant. " Issue" is a word of limitation, unless there are expressions indicating that the testator·meant children : Smith on Ex. Int., § 514 ; 2 Jarvis on Wills, p. 246 ; George *v.* Morgan, 4 Harris 95. There is nothing here to indicate that issue was intended as anything but a word of limitation : Jones *v.* Morgan, 1 Bro. C. C. 216.

But if the words import a contingency, yet the plaintiffs are the heirs at law of the testator, and the fee descended on them till the contingency happens : Fearne 340 ; Smith, § 778 ; Bennett *v.* Morris, 5 Rawle 10.

*Charles E. Lex*, for appellees.—The words create a contingent remainder. The cases cited by the complainant are not analogous; a special person was named in whom the remainder was to vest. Radcliff *v.* Bagshaw, cited by complainant, is like this case. The parties to take cannot be determined until the death of the widow : Dunwoodie *v.* Reed, 3 S. & R. 435, decides this case : Fearne on Con. Rem. 217, also p. 8, §§ 11, 4 ; Smith *v.* Folwell, 1 Binn. 546. The point is positively decided in Harris *v.* McElroy, 9 Wright 216.

The opinion of the court was delivered, March 6th 1866, by

THOMPSON, J.—It is almost impossible to distinguish this case from Manderson *v.* Lukens, 11 Harris 31. The provision in the will there was, that upon the death or intermarriage of the decedent's widow, his estate was to be equally divided between all his children " which may then be alive, or who may have left legitimate heirs, share and share alike, &c." The word "legitimate heirs" was construed "issue," the word used in this case ; thus making the resemblance very complete. It was held to be a vested remainder in the children of the testator, notwithstanding the division of the estate was not to take place until after the decease of the widow ; and there as here, the distribution or partition was to be to the heirs *then alive*, and to the issue of those who may have died. It was there held, on the authority of Kerlin *v.* Bull, 1 Dallas 175, and Frame *v.* Stewart, 5 Watts 433, to which might have been added many elementary citations, that the word " when" or " whenever," referring to the time at which property is to be divided, will not be allowed to make a devise to children contingent, for these words and their synonyms almost always appear when a vested remainder is created. " When" and " upon," referring to the time of performing an act, are substantially

[Womrath *v.* McCormick.]

synonymous: Adams *v.* Williams, 2 W. & S. 227. Passmore's Appeal, 11 Harris 381, seems also in point in this case. Mr. Fearne, p. 167, says, "It sometimes happens that a remainder is limited in words which seem to import a contingency, though in fact they mean no more than would have been implied without them, or do not amount to a condition precedent, but only denote the time when the remainder is to vest in possession." This is exactly descriptive of the case in hand. The devise of the estate being to the widow for life, its division and enjoyment could not take place until after her estate was determined by death, and the reference to that as the period of division and enjoyment by the word "upon," created no contingency of estate. A contingent remainder, is a remainder limited so as to depend on an event which may never happen or be performed, or which may not happen or be performed till after the preceding estate: Fearne, p. 3. The same author, at p. 217, observes: "In short, upon a careful attention to the subject, we shall find that wherever the preceding estate is limited so as to determine on an event which certainly *must* happen, and the remainder is limited to a person *in esse*, that the preceding estate may by any means determine before the expiration of the estate limited in remainder, such remainder is vested." On the contrary, if the limitation is upon a condition which may never happen, or to a person not *in esse*, or so as to require the concurrence of some dubious uncertain event, independently of the determination of the preceding estate and the duration of the estate limited in remainder, to give it capacity of taking effect, there the remainder is contingent: Id. 217. Here the life or particular estate in the widow must certainly determine at no very remote period, and by no possibility could the remainders determine during the continuance of that estate, for they were to the several children, their heirs and assigns or issue, interchangeably, and each constituted a single unconditional estate in remainder. The devisees were all *in esse* and ascertained, and were the children of the devisor. It seems to us that there was nothing contingent in the interest devised, but only as to the time of enjoyment, and that would have no effect upon the character of the estate.

The first object of the testator's bounty was his widow, and the second his children; and, in the event of death before partition, their issue. This designation of succession was nothing. It was what the law provides, and hence created no contingency of estate in his children. It is difficult to believe that the testator meant to do anything less than to divide his estate equally among his children at the times specified; and he directed, what the law would require, that the issue of any one of them having died, should represent his parent in the distribution, and of course in the succession. Were we to hold the estates devised to the children to be

[Womrath *v.* McCormick.]

contingent remainders, there being no trust of the estate created, the title would, on the death of the testator, descend to the children as the exact representatives of the ancestor, subject to the life estate, and thus, as was said in Manderson *v.* Lukens, *supra*, the children might have both a vested and contingent remainder, at least for a time.

The ground upon which these remainders are claimed to be contingent is the possibility of the decease of a child or children of the testator leaving issue, when partition was to be made, but who might be cut out by alienation before that time. The terms "heir," "issue," and the like, define the quantity of estate, and the heirs succeed to it on the death of the ancestor by law. In all such cases succession may be defeated by alienation of the ancestor. The reference to issue here, regarded the succession of the law, and created no contingency to prevent the estate devised to the children from being vested remainders. The law requires the construction to be made in doubtful cases in favour of vested in preference to contingent remainders, and indefeasible to defeasible estates. We hold that the remainders to the children in this case were vested, to be enjoyed *in futuro*, and that the deed of the widow and devisees for the property in question conveys a good title.

The decree at Nisi Prius must therefore be reversed, and a decree entered for complainants.