## Heath's Estate.

*Wills—Construction—Vested and contingent interests—Gifts to children "then living."*

1. Under a gift, after a life interest, "to my children then living and their heirs forever, and if there should be a child or children of any of my children then deceased, they or it shall have the share of the deceased parent," the remainders to the children are contingent on their surviving the life-tenant.

*Wills—Construction—Hood v. Pennsylvania Society, 221 Pa. 474, distinguished.*

2. The rule laid down in Hood *v.* Pennsylvania Society, 221 Pa. 474, that the construction of the words used by the testator should be determined according to the decisions of the Supreme Court made before the date of the will, obtains only where the phraseology used by him is identical with that of wills which had been construed by the court, or, if not identical, is at least so similar as to afford a fair basis for the presumption that he was familiar with it; otherwise, it would be rash to assume that he had it in mind and intended to follow it.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1901, No. 358.

*Horace Michener Schell* and *Franklin E. Barr*, for exceptant.

*Benjamin H. Ludlow*, contra.

GEST, J., Feb. 13, 1926.—The question raised by these exceptions was, without doubt, correctly decided by the Auditing Judge. The remainders were given, after the death of the testator's widow, "to my children then living and their heirs forever, and if there should be a child or children of any of my children then deceased, they or it shall then have the share of the deceased parent." These remainders are clearly contingent, both according to the plain language of the will and the decisions of the Supreme Court, among which Mulliken *v.* Earnshaw, 209 Pa. 226, may be especially noted.

At the audit, however, and on the subsequent argument before the court *in banc*, the exceptant argued that the case was governed by the rule laid down in Hood *v.* Pennsylvania Society, 221 Pa. 474, namely, that the construction of this will should be determined according to the decisions of the Supreme Court made before its date, and these, it was argued, would make the remainders vested as of the date of the decedent's death.

It, therefore, seems necessary to discuss the doctrine of Hood *v.* Pennsylvania Society somewhat in detail, and as the report thereof in 221 Pa. is somewhat meagre, we have examined the paper-books in order to ascertain the facts more fully. We there find that the will of William Patterson was

dated Oct. 10, 1850 (a codicil dated Feb. 5, 1859, merely changed the executors and did not expressly confirm the will in other respects), and Patterson died March 18, 1863. By his will, the testator devised his residuary estate to his daughter, Mary Jane, wife of Walter Patterson, for her life, and after her decease, "then to the children of my said daughter, Mary Jane, her surviving in equal parts and to the lawful issue of such as may have deceased—such issue taking no more than their respective proportions of the share of their deceased parent, to have and to hold the same to them in fee simple, subject to, nevertheless, and charged with, both as to the life estate of my said daughter Mary Jane and the estate of her children, the payment of the following annuities and legacies, viz.," etc.

Mary Jane had only one child, Mary A. Smith, and on June 8, 1884, Mary Jane Patterson and her daughter, Mary A. Smith, mortgaged the devised premises to the Pennsylvania Society. Subsequently, on Oct. 30, 1894, Mary A. Smith died, leaving two children, Bessie Hood and De Witt C. Derringer, and afterwards Mary Jane Patterson died on Sept. 20, 1905. On Jan. 17, 1906, Bessie Hood and De Witt C. Derringer filed their bill in the Court of Common Pleas against the Pennsylvania Society, the mortgagee, praying that the mortgage be delivered up for cancellation, on the ground that Mary A. Smith's title was contingent on her surviving her mother, Mary Jane Patterson, and, consequently, the mortgage was void. Willson, P. J., in dismissing the bill, said: "In the case in hand, William Patterson used certain language disposing of his real estate. According to the settled construction given to such language by the courts at the time he made his will and when he died, his daughter, Mary A. Smith, took a vested estate in remainder in the property which is now in controversy. Must we not necessarily draw the inference that he intended she should have such an estate, and, therefore, that she should have the right, along with her mother and husband, to execute such a mortgage as the defendant took? On the faith of the law as it was then interpreted, the defendant presumably parted with money to secure the return of which the mortgage was given. The rights of the defendant may be regarded as having then been settled according to a proper interpretation to be given to the will of the testator."

And the Supreme Court, in affirming the decree, said, *per curiam:* "In the present case, therefore, as in all others, the question is, what was the intention of the testator, and that is to be ascertained by what the testator understood to be the legal meaning of his language at the time he used it. It is practically conceded that at the date of the testator's will the gift of a life estate to his daughter, and after her decease, then to her children 'her surviving,' gave the daughter's daughter a vested remainder. That being the generally accepted meaning of the language at the time the testator used it, must, in the absence of anything to the contrary, be accepted as the expression of his actual intent."

It will be observed that, according to this opinion, there should be considered the generally accepted meaning of the language used by the testator when he made his will. The decision in Hood *v.* Pennsylvania Society has no wider scope. We do not think, therefore, that any subsequent decisions of the Supreme Court, made thereafter and before the testator's death, have any application in the ascertainment of the testator's intent, and still less have those decided after the testator's death. We mention this as, in the argument in Hood *v.* Pennsylvania Society, counsel cited numerous cases decided after 1850, when the will was executed, and up to 1884, when the mortgage in dispute was made. The crucial question, indeed, the only ques-

tion, is what did the testator mean by the words which he used? and, certainly, decisions made after his death have nothing to do with that.

We have serious doubt whether, under the decisions of the Supreme Court decided prior to 1850, the date of the will in Hood *v.* Pennsylvania Society, there could be said to have been given any settled construction to the language used therein. In the opinion of the Court of Common Pleas No. 4, no case was cited which was decided prior to 1850, when the will was made, and none prior to 1863, when the testator died, except Manderson *v.* Lukens, 23 Pa. 31, which was decided in 1854; but this case, though decided prior to the date (1859) of the codicil in Hood *v.* Pennsylvania Society, can hardly be said to have been in the mind of the testator when he made his will. In the argument of counsel for the defendant in Hood *v.* Pennsylvania Society reference is, indeed, made to Frame *v.* Stewart, 5 Watts, 433 (1836), but the facts of that case are so different from those in Hood *v.* Pennsylvania Society that it is impossible to say that the will in the latter case was modeled upon the will in the former; the same may be said of Potts's Appeal, 30 Pa. 168 (1858), also cited by counsel for the defendant appellee.

However, taking the rule of Hood *v.* Pennsylvania Society, as laid down by the Supreme Court, it is necessary to examine the cases decided prior to 1862, when Thomas Heath, the present testator, made his will. The only one is Manderson *v.* Lukens, 23 Pa. 31 (1854), where Browne, the testator, devised his estate to his widow Hannah for life or widowhood, and "whenever her death or remarriage should take place," directed his estate to be equally divided among all his children "which may then be alive, or who may have left legitimate heirs, share and share alike." The testator left besides his widow three children, two of whom afterwards died without issue, leaving Peter Browne the survivor of the three, to whom and his heirs the widow conveyed all her interest in the estate under the said will. Afterwards the survivor, Peter Browne, by his will, authorized his executors to sell and convey all or any part of his estate, and he afterwards died seised of that estate, leaving issue one child. The executors, under the power of sale, sold and conveyed to the plaintiffs in the case certain real estate of which the testator had died seised, and the question, in an action for the purchase money, was whether the plaintiffs had a right to make a good and sufficient title in fee simple? The Supreme Court first disposed of the case on the ground that there was "a devise to the testator's children, that is, his heirs, and, impliedly, to their heirs, after the death of his widow. In other words, the devise of a life estate, with remainder to his heirs at law, which is necessarily a vested remainder or rather a reversion. And Peter, having become the heir of the two who died, takes the whole." Further on the court said: "We cannot allow the word 'whenever,' referring to the time when the property is to be divided, to make the devise to children contingent; for that word, or its synonyms, almost always appears where a vested remainder is created. . . . . Moreover, the rule that an estate will not be construed as contingent if it is at all practicable to construe it as vested is quite as valuable and inflexible as the one just cited." The court, accordingly, held that the children took a vested interest, subject to be divested in the event of their dying without issue during the lifetime of the tenant for life, and that Peter, the surviving son, inherited the shares of his brothers, who died without issue, and thus, with the devise to himself, became entitled to the whole remainder.

That the language of the will in Manderson *v.* Lukens is quite different from that in the present case readily appears, nor is the similarity by any means so great as to induce the belief that it was present in the mind of

Thomas Heath when he made his will, for *nullum simile est idem,* nor can it be said that the language employed by him "had been fixed by judicial determination," or had received a "settled construction" or a "generally accepted meaning," at the time the testator used it. In such cases, and perhaps Lisle's Estate, 10 Dist. R. 713, is an example, it would be proper to assume that a testator made his will, especially if it be drawn under legal advice, with reference to judicial decisions which had already been rendered. But, unless the phraseology is identical with that of wills which had been so construed, or if not identical, is at least so similar as to afford a fair basis for the presumption that the testator was familiar with it, we think it would be very rash to assume that he had it in mind and intended to follow it. We think it is proper to restrict the rule of Hood *v.* Pennsylvania Society, as we have thus done, for two reasons: First, because we shall thereby avoid confusion and uncertainty in the interpretation of wills, for it would be necessary in every case for the court to consider, not merely the most recent decision of the Supreme Court, but the decision of the point in question prior to and up to the exact time when the will was executed, and then determine the controversy as of that date. The same question might well arise in two cases at the same time and be decided differently in each, regard being had to the respective dates of the wills. And, in the second place, it will appear that some, and perhaps many, cases have been decided where the rule of Hood *v.* Pennsylvania Society has been disregarded or passed *sub silentio,* which does not tend to the consistency and uniformity of the law. Thus, in Long's Estate, 225 Pa. 39, decided on May 20, 1909, just one year after Hood *v.* Pennsylvania Society, the testator made his will in March, 1867, confirmed it by a codicil in 1870, and therein devised an estate to his niece, and after her death gave the same to her children "living at the time of her death, share and share alike." The niece had one child, who died before her, intestate and without issue, and the court held that the remainder to her children was contingent and refused to award the estate to the administrator of the deceased child. On appeal, the rule of Hood *v.* Pennsylvania Society was expressly invoked and Manderson *v.* Lukens, 23 Pa. 31 (1854), and Womrath *v.* McCormick, 51 Pa. 504 (1866), were cited, but the Supreme Court affirmed the adjudication of the Auditing Judge and dismissed the appeal.

In Mulliken *v.* Earnshaw the court said that this case belonged to the class of Craige's Appeal, 126 Pa. 223 (1889), in which the testator directed that his estate should, after the termination of the prior estate, be divided in two portions, and one of them distributed in equal proportions to the children of his son Edmund and his son's wife Ann "living at the time of their deaths." At that time one son only was living, there being issue of another deceased child, and it was held that the remainder was contingent on survivorship, so that the son was entitled. The testator died in 1855, so that, under Hood *v.* Pennsylvania Society, it would appear that the decision should necessarily have been to the contrary.

It was urged at the argument that Mulliken *v.* Earnshaw, 209 Pa. 226, was inconsistent with Carstensen's Estate, 196 Pa. 325, but we see no inconsistency. In Carstensen's Estate the remainder, after the death of the life-tenant, the husband of the testatrix, was given to "my brothers and sisters; the child or children of any of my said brothers or sisters who may then be dead to take and receive the share that his or their parent would have taken if living." This was held to be a vested remainder to the brothers and sisters as a class, vested as of the death of the testatrix, and only liable to be divested by the death of the legatee leaving issue during the life of the first taker. There

were no words of contingency or survivorship as in Mulliken *v.* Earnshaw, or anything from which survivorship could be inferred. Carstensen's Estate was correctly decided and has been repeatedly followed.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LAMORELLE, P. J., did not sit.