## Chess's Appeal. Middleswarth's Estate.

1. A legacy is to be deemed vested or contingent, just as the time when it is to take effect shall appear to be annexed to the gift or the payment of it. Where there is no substantial gift, and it is only implied from the direction to pay, the legacy is contingent. But this rule is not to prevail where a contrary intention is to be collected from the words or circumstances.

2. The fact that a devise gives an interest which is a contingent one, does not affect the right of transmissibility, unless the contingency is one which affects the capacity of the second taker.

3. A testator gave real estate to his son, and should he die without legitimate issue then the property was to be sold and distributed among his grandchildren. *Held*, that the representatives of the grandchildren, who died before the son's death, should share in the distribution with the grandchildren then living.

4. Kelso *v.* Dickey, 7 W. & S. 279, and Hopkins *v.* Jones, 2 Barr 69, followed.

October 10th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Orphans' Court of *Allegheny county:* Of October and November Term 1878, No. 267.

Appeal of William Chess from the decree of the court distributing the fund in the hands of John Hickman, administrator d. b. n. c. t. a. of the estate of Moses Middleswarth, deceased.

Moses Middleswarth died in 1842, leaving a will, wherein he devised certain real estate to his son Jonathan, directing that in case his said son should die without leaving any legitimate issue, that the land should be sold, and after paying certain legacies the balance should be equally divided amongst all his legitimate grandchildren, born or to be born, share and share alike.

On the assumption that his devise was an estate in tail, Jonathan Middleswarth executed an appropriate deed to bar it, and the land having been reconveyed to him, he sold it to Blackmore. Jonathan Middleswarth died on the 8th of June 1869, without issue, never having been married. The four executors of the will being dead, letters of administration d. b. n. c. t. a. were issued to John Hickman, who, in 1871, instituted an action of ejectment, and recovered the land devised to Jonathan. (See Middleswarth's Administrator *v.* Blackmore, 24 P. F. Smith 414.) Under the powers and in pursuance of the directions contained in the will, the administrator sold the real estate which was the subject of the devise in question, and after payment of the specific legacies above referred to, taxes and the expenses of the administration, there remained in court for distribution among the grandchildren of the testator the sum of $11,020.

The grandchildren referred to are described in another part of the will as the "legitimate children of my son Jesse Middleswarth, now deceased, the legitimate children that is or may be born of my daughters Zibia Henry, Mary Chess, Euphemy Coulter, Anne

Fryer, Hannah Coulter." All the daughters were married and had children at the date of the will.

The grandchildren of the testator, excluding those who died before his decease, were thirty-eight in number. Of these twenty-one died before Jonathan Middleswarth; seventeen were living at the time of his decease, all of whom survive. The only question before the Orphans' Court when making the distribution, was whether the legacies were vested at the death of Moses Middleswarth, the testator, or were contingent on the death of Jonathan Middleswarth without issue, and took effect as vested legacies on his death. The court held that the legacies were vested on the death of the testator, and decreed accordingly.

William Chess, one of the grandchildren, took this appeal.

*R. B. Carnahan*, for appellant.—Where there is no gift but by a direction to pay or divide and pay at a future time or on a given event, or to transfer "from and after" a given event, the vesting will be postponed till after that time has arrived or that event has happened, unless from particular circumstances a contrary intention is to be collected: Leake v. Robinson, 2 Meriv. 387; Booth v. Booth, 4 Vesey 399; Moore v. Smith, 9 Watts 403; Donner's Appeal, 2 W. & S. 372; Seibert's Appeal, 1 Harris 501; Bowman's Appeal, 10 Casey 19; Lamb v. Lamb, 8 Watts 185; McClure's Appeal, 22 P. F. Smith 417. This case is within the very terms of the rule which declares a legacy to be contingent where the words "payable," or "to be paid," are not used, and there is no gift in express terms; but the bequest is inferred from a direction "to divide," or "to divide and pay," *at* a future time, or *on* a given event, or from and after a given event, or "if," "when," "in case of," &c. Such expressions annex the time to the substance of the legacy.

*John G. Bryant* and *John D. Shafer*, for appellee.—Whilst the legacies in question were contingent until the death of Jonathan, the death of a legatee did not preclude the possibility of the happening of the contingency, and therefore did not determine the interest; and such a contingent interest is transmissible to the personal representatives upon death: 1 Jarman on Wills 777, and cases there cited; Winslow v. Goodwin, 7 Metc. 363; Hopkins v. Jones, 2 Barr 69; Kelso v. Dickey, 7 W. & S. 279; Williams on Executors, pp. 795 and 797, and cases there cited, 5 Am. ed. The contingency could happen as well after the legatee's death as before; whilst in the cases cited for the appellant it could only happen in the legatee's lifetime, and consequently his death before its happening terminated his contingent interest, and there was nothing to transmit. The question of transmissibility could not arise; the only question being that of the contingency of the legacy.

Mr. Justice SHARSWOOD delivered the opinion of the court, October 21st 1878.

Moses Middleswarth by his last will devised certain real estate to his son Jonathan, directing that in case his said son should die without leaving any legitimate issue, the land should be sold, and after paying certain legacies, the balance remaining to be equally divided amongst all his legitimate grandchildren, born or to be born, share and share alike.    The question which is presented for decision upon this appeal is whether the interest thus given to his grandchildren was transmissible to their representatives on their death before the period when the division was to take place.

No doubt it is the general rule that a legacy is to be deemed vested or contingent just as the time when it is to take effect shall appear to be annexed to the gift or the payment of it.    Where there is no substantive gift, and it is only implied from the direction to pay, the legacy is contingent.    But this rule is, of course, subject to the necessary exception that a contrary intention is not to be collected from the words or circumstances.    In McClure's Appeal, 22 P. F. Smith 414, our late lamented brother, WILLIAMS, in an elaborate and exhaustive opinion has shown that there are many cases in which this general rule is not applicable.

In Chew's Appeal, 1 Wright 23, it was said by Mr. Justice STRONG, that " generally a bequest after the death of a particular person to whom an antecedent interest is given in the same will, is held not to denote a condition that the legatee shall survive such a person—not to define when the interest shall vest, but only to mark the time when the gift shall take effect in possession, that possession being deferred merely on account of the life-interest limited to the person on whose death the gift is to take effect."    So in McClure's Appeal, Mr. Justice WILLIAMS said : " Though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question."    Thus, in the common case of a legacy or gift to A., and on his death to B., no one doubts that both interests, the present and the future, vest together at the same instant.    Attaching a contingency to the gift of the second bequest ought not and does not affect the case unless that contingency relates to the capacity of the second legatee or donee to take.    In a legacy to A., and if he dies before attaining the age of twenty-one, then to B., the interest of B., though dependent upon a contingency, is transmissible.    It would be different if the gift over was to B. at twenty-one, for if he should die before attaining that age, he could never take, and could therefore have nothing to transmit.    It was in accordance with these principles that the case of Kelso *v.* Dickey, 7 W. & S. 279, was decided.    There a testatrix bequeathed a legacy to her daughter

[Chess's Appeal.]

under the following contingency : " In case she dies before the age of twenty-five, or without issue born, then to be divided equally between my sister and brothers." The daughter died without issue before she arrived at twenty-five. It was held that the legacy was so vested in the sister and brothers of the testatrix as to be transmissible to their personal representatives in the event of their death before the daughter of the testatrix. Mr. Justice SERGEANT said : " The contingency on which the legatees over were to take was not a contingency annexed to their capacity to take; such, for example, as their living to a certain time ; but an event independent of them and not affecting their capacity to take or transmit the right to their representatives, and such a contingent interest has frequently been decided to be vested so as to be transmissible to representatives." To the same effect is Hopkins v. Jones, 2 Barr 69. These cases are in point and rule that which is before us.

Had the devise been to Jonathan and on his death then to be divided among the grandchildren, no one could question the transmissibility of their interests. That they were to take only in case he died without legitimate issue, though it made their interest dependent upon a contingency, did not change its character in this respect, because it was not a contingency which affected at all their capacity to take. Whenever the contingency happened, if ever it did happen, they would be entitled. The inclination of the courts is always in favor of the vesting of legacies, because in ninety-nine cases out of a hundred it is the intention of the testator that his bounty should be transmitted to the children or family of the beneficiary, otherwise indeed full effect is not given to it.

Decree affirmed and appeal dismissed at the costs of the appellants.