> The appeal is therefore dismissed at the cost of
> the appellant.

---

## APPEAL OF T. HUSTON CRAIGE.
## APPEAL OF COMMONWEATH TITLE ETC. CO.
## APPEAL OF ELIZABETH R. PENNELL, ET AL.

[Estate of Thompson Holmes, Deceased.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADEL-
PHIA COUNTY.

Argued April 2, 1889—Decided May 6, 1889.
[To be reported.]

(a) The will of a testator dated in 1855, provided: "In the event of my
son's decease, and of his wife, Ann, while a widow, or in the event of her
second marriage, I will that my whole estate shall be immediately divided

Statement of Facts.

in two equal portions . . . . , and that one half of said estate thus divided shall be distributed in equal proportions, to the children of my son Edmund and his wife Ann, living at the time of their death or of said Ann's second marriage.

1. Edmund died May 15, 1878, and his widow, Ann, September 11, 1888; Edmund left two children to survive him, George W., who survived his mother, and Hattie, who died before her: In such case the estate given to the children of Edmund and Ann Holmes was contingent and became vested only upon the death of both father and mother, and then in such of their children as were living at that time : McBride v. Smyth, 54 Pa. 245, followed.

2. Where an estate is devised to such children as shall be living at a certain time, without any distinct gift to the whole class, preceding such restrictive description, so that the uncertain event forms part of the description of the devisee, the devise is contingent, for until the happening of the event there is no person answering the description of the person who is to take.


Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 162, 168, 243 January Term 1889, Sup. Ct.


On October 8, 1888, the account of the Pennsylvania Company for Insurance on Lives, trustee under the will of Thompson Holmes, deceased, showing a balance for distribution, of principal $35,376.20, and of income, $17.06, was called for adjudication before FERGUSON, J., when the following facts were shown :

Thompson Holmes died in 1855, leaving a son, Edmund A. Holmes, and a daughter, Caroline T. Ely, to survive him. By his will dated April 26, 1855, and duly admitted to probate, he directed that the income of his estate should be paid to his two children, Edmund A. Holmes and Caroline T. Ely, in equal portions, and then provided as follows :

" 3. I will that in event of my son's decease before that of his wife Ann, the said half of the income of my estate to be paid to her, by the trustee named above, or his successor, for the benefit of herself and her children during her life or widowhood; the said Ann shall forfeit all claims to said income and estate upon her second marriage.

" 4. In the event of my son's decease, and of his wife Ann, while his widow, or in the event of her second marriage, I will that my whole estate shall be immediately divided in two equal

portions by my trustee herein named, or his successor, calling to his aid the advice of my daughter Caroline, and such other friends of the family as they may choose to consult; and that one half of said estate thus divided shall be distributed in equal proportions, to the children of my said son Edmund and his wife Ann, living at the time of their death or said Ann's second marriage, giving hereby to my daughter Caroline the choice of one half of said estate thus divided.

"5. I give to my daughter Caroline full and unlimited control over one half of the income of my estate, dispensing with the agency of a trustee, should she desire to do so: and I hereby invest her with full power to devise her half of estate to her surviving children or their lawful issue in proportions according to her opinion of their merits; and if no such child or children or their lawful issue should be living at the time of her decease, then to be distributed and bequeathed, by her will, either to her brother Edmund or to his children, living at the time of her decease, in such proportion to each, as she in her own uncontrolled judgment may think proper."

Edmund A. Holmes, the testator's son, died May 15, 1878, leaving to survive him his widow, Ann, and two children, George W. Holmes and Hattie A. Jamison. Hattie A. Jamison died April 30, 1887, leaving to survive her two children, Benton K. Jamison, Jr., and William S. Jamison. Ann Holmes, the widow of Edmund A., died without re-marriage, September 11, 1888, leaving to survive her only one child, the son, George W. Holmes.

A number of other children of Edmund A. Holmes had died during his lifetime; one of them, Maria, intermarried with Charles H. Craige, left one son, T. Huston Craige; another, Margaret, intermarried with Edward Robins, left three children, two of whom were Mrs. Anna M. Douglass and Mrs. Elizabeth R. Pennell.

Mrs. Caroline T. Ely, the daughter of the testator was still living.

It was contended on behalf of George W. Holmes, the only living child of Edmund Holmes and his wife Ann who was living at the death of his mother, that the will gave an estate to the children contingent upon their being alive at the time of the happening of a certain event, to wit, the death of their mother;

and as he was the only child who was then living, he was then entitled to the whole fund. On the part of other claimants it was contended that the estate was vested in all the children of Edmund and Ann Holmes, and that the children of those who were deceased were entitled to receive their parents' shares.

The auditing judge, citing McBride v. Smyth, 54 Pa. 248; Smith on Executory Interests, 281; Dickinson v. Lee, 4 W. 82; Hallowell v. Phipps, 2 Wh. 376; Theobald on Wills, 138, awarded one half of the balance in the hands of the accountant to Commonwealth Title Insurance & Trust Co., trustee for George W. Holmes, under a certain deed of trust executed by him to said company; and the other half was awarded to Mrs. Caroline T. Ely, upon the trusts expressed in the will, upon her giving security to protect the interests of those in remainder, and her own bond was approved as such security. To this adjudication exceptions were filed by B. K. Jamison, administrator of Hattie A. Jamison, deceased; by T. Huston Craige, and by Elizabeth R. Pennell and Anna M. Douglass.

The said exceptions having been argued before the court in banc, PENROSE, J., delivered the opinion:

The testator may have had a reason for confining the limitation of the half of his estate given to his son for life, to the son's children, to the exclusion of his grandchildren, or he may have had none; the sole question is, has he done so, and this is to be determined, not by conjecture or suggestion of hardship or injustice, but by what he has said.

Undoubtedly the word children may, where the will taken in its entirety so indicates, be understood as the equivalent of issue or descendants; but its ordinary meaning is restricted to a single generation, and the rules of construction forbid any enlargement where, as in the present case, the other parts of the will show that it was used in its literal sense. In the immediately succeeding clause providing for the devolution of the other half of the estate at the death of the daughter, specific mention is made of "issue of deceased children," as well as "children" of the daughter; and then, as if to emphasize the distinction with regard to the son's half, and show that there was no accidental omission, in limiting the daughter's share in the event of her death without issue to certain ap-

pointees by her will, he confines the class in whose favor such power is to be exercised to the son and his "children living at the time of her death."

The result so far as it excludes grandchildren of the son, whose parents died in his lifetime, is harsh and unnatural, but, under the authorities, it cannot on that account be avoided.

A different question is presented, however, as to the shares of children of the son living at his death, but dying in the lifetime of his widow and before the time appointed for distribution. The gift being to children living at a certain date, grandchildren are excluded ex vi termini, as are also children who have previously died. But, it is well settled, the interests of children may be vested, if they survive the prescribed period, though they died before distribution; as in the case of a gift to children when the youngest shall attain the age of twenty-one, where the personal representatives of those reaching the age of twenty-one, but dying in the minority of the youngest will take: Hawkins on Wills, 233. Here the provision is : "In the event of my son's death and of his wife Ann, while his widow, or in the event of her second marriage, I will that my whole estate shall be immediately divided into two equal portions . . . . . and the one-half shall be distributed in equal portions to the children of my son Edmund, and his wife Ann, living at the time of their death or said Ann's second marriage." The expression "living at the time of their death or said Ann's second marriage," is ambiguous. It may mean living at the death of either, or the marriage of Ann, and this is its natural signification ; Willes v. Douglas, 10 Beav. 56; Wills v. Wills, L. R. 20 Eq. 342 ; Pennsylvania Company's Appeal, 20 W. N. 41 ; or living at the death of the survivor, or the marriage of Ann, whichever may take place last. But if the latter had been the meaning, as the distribution had just been directed to take place at that time, it would have been more natural to say "to the children then living." The use of a different expression implies a different meaning; and even if it were still doubtful, as it must be conceded to be, the well-settled rule in such case, especially where the question involves the disposition of a residue, is to adopt the construction most in accordance with the statutory distribution. One standing in the relation of heir will not be disinherited by words of

doubtful import, and the presumption is in favor of an early vesting. It follows that the interest of a child of the son living at the time of his death was not lost by reason of death before the mother, and that it must be awarded to the personal representative of the child so dying.

That the testator when he declared that his daughter, to whom he gave one half of his estate for life with power to appoint to her children and issue, etc., etc., should have "full and unlimited control of one-half of the income . . . . . dispensing with the agency of a trustee," did not mean that she should have possession without being required to give security, is by no means clear; since otherwise, should she be unable to give it, she could not have dispensed with the agency of a trustee. But if this be not so, the acts of assembly permit the court to determine the form and amount of security to be given by a tenant for life to secure the interest in remainder, and in view of her power to appoint, and the admitted sufficiency of her own estate to respond to any demand on the part of the persons who may be entitled under the testator's will, we cannot say that it was not proper to take the individual bond of the daughter as sufficient security under the act: See Mellon's Est., 16 Phila. 323; s. c. Gowen's App., 106 Pa. 288.

The exceptions on the part of the administrator of H. A. Jamison are sustained; the other exceptions are dismissed, and the adjudication modified in accordance with this opinion confirmed. Let the necessary decree be prepared by counsel.

A decree having been signed in accordance with the foregoing opinion,

T. Huston Craige took an appeal, specifying that the court erred in not awarding to appellant one eighth of said trust estate.

Elizabeth R. Pennell and Mrs. Anna M. Douglass took an appeal, specifying that the court erred in not awarding to appellants each one sixteenth of said trust estate.

The Commonwealth Title Insurance & Trust Co. took an appeal, specifying that the court erred in not awarding to appellant, as trustee of George W. Holmes, the whole of one half of said trust estate.

*Mr. Theodore F. Jenkins* (with him *Mr. William B. Robins*), for appellants.

*Mr. Alex. P. Colesberry* (with him *Mr. Frank. R. Shattuck*), for the Commonwealth Title etc. Co., appellant.

*Mr. Henry T. Dechert*, for B. K. Jamison, administrator, appellee.

OPINION, MR. JUSTICE GREEN:

These are three appeals by different parties in interest from the same decree, and as they raise the same question they are considered together. The adjudication made by the auditing judge gave the whole of the fund in controversy in two equal parts, one half to Caroline T. Ely, and the other half to the trustee of George W. Holmes. It is the distribution of the latter half which is the subject of the present contention. The adjudication of the auditing judge was based upon the theory that the bequest to the children of Edmund and Ann Holmes was contingent upon the death of both parents and the survivorship of those children who were then living. George Holmes being the only one of the children who was then living, was awarded the whole of the fund in dispute. The Orphans' Court, however, took a somewhat different view of the language of the will, and while recognizing the correctness of the rule that grandchildren are not included within the description, " children," as legatees, held that the case came within the exception to this rule, that where there are grandchildren and no children living at the time of vesting, grandchildren will be treated as if they were children, and that also where there is ambiguity in the language describing the legatees, and the contingency is the death of two persons, the death of either is the period of vesting. In accordance with this view the Orphans' Court awarded one half the fund in controversy to the administrator of Mrs. Hattie A. Jamison, who was a child of Edmund and Ann Holmes, and died after her father and before her mother. The theory upon which this was done was that the language of the will was ambiguous as to whether the period of vesting was the death of either, or the death of both the life-tenants, and therefore the construction should be most in accordance with the statutory distribution. We cannot agree with this view of the case, because we cannot discover any ambiguity in the language of the will.

The question arises under the forth clause of the will, and it is in these words:—

" In the event of my son's decease and of his wife Ann, while his widow, or in the event of her second marriage, I will that my whole estate shall be immediately divided into two equal portions by my trustee herein named, or by his successor, calling to his aid the advice of my daughter Caroline, and such other friends of the family as they may choose to consult, and that one half of said estate thus divided shall be distributed in equal proportions to the children of my son Edmund and his wife Ann, living at the time of their death or said Ann's second marriage, giving hereby to my daughter Caroline the choice of one-half of said estate thus divided."

Edmund, the son, died May 15, 1878, and Ann, his widow, died without re-marriage, September 11, 1888. The question is, did the estate of the legatees in remainder become vested at the death of the testator, in 1855, or at the death of his son Edmund, in 1878, or at the death of Ann, the son's widow, in 1888? We are clearly of opinion that the estate of those in remainder is contingent and becomes vested in possession upon the death of both Edmund and Ann Holmes, and only in those of their children who were living at that time.

The event upon which the estate is to be divided and distributed is twice defined. In the first clause of the fourth section it is thus described: " In the event of my son's decease, and of his wife Ann, while his widow, or in the event of her second marriage, I will that my whole estate shall be immediately divided into two equal portions by my trustees," etc. It is perfectly manifest that there is to be no division under these words until two facts have transpired, to wit: First, the son's death, and second, the death or second marriage of his widow. It is the death of both, and not of either one, which must precede division. In this part of the fourth clause there are no words of gift or disposition, division only being provided for. After division into two equal portions has been made the last part of the clause directs the distribution thus: " and that the one-half of said estate thus divided shall be distributed in equal proportions to the children of my son Edmund and his wife Ann, living at the time of their death or said Ann's second marriage." Here again, the death of both Edmund and Ann

is fixed as the period of vesting. It is not the death of either but of both that must transpire before vesting can take place. Then the persons who are to take are the children of Edmund and Ann, living at the time of *their* death—not the death of either but of both. There are no words of gift except those which also describe the legatees. The fund is to be distributed to the children, etc. It is therefore not the case of a previous gift and a postponement of the time of payment, but an immediate and direct gift to a class of persons who must fulfill the description contained in the very words of the gift in order to take it at all. They are not donees in any sense unless they are children of Edmund and Ann, living at the death of Edmund and Ann. There is but one such person, and if the words in which the estate is given are to receive their plain, simple, inevitable meaning, that one person must take the estate.

It is impossible for us to say either that there is any ambiguity in the language of the will, or that there was any meaning in the mind of the testator other than that which his own chosen words clearly express. In the case of Varner's App., 87 Pa. 427, we said: "It is true, words may in some cases be supplied to carry out a defectively expressed intent, but not to create another intent, where one is distinctly expressed by the language of the will. They can be supplied only in cases necessary to give effect to the most unquestionable purpose of the testator." In McBride v. Smyth, 54 Pa. 245, we said: "It is unwarranted to assume that something different from the clear meaning of the words used was the testator's intention when the assumption rests on nothing in the will itself, but solely on conjecture." In this last case the words of the will were quite similar to those we are considering, to wit: "And upon the youngest of my children who may be living attaining the age of twenty-one years," the estate was given, "to such of his children as might be living at that time." We said: "This is not a mere postponement of the time of enjoyment. It is a selection of individuals from a class to be donees of a right; a description of persons, not a regulation of the interest given. It is impossible to admit that a gift to such a number of persons as may meet a defined description is a gift to all the persons, whether they meet the description or not. The rule of legal construction, as well as the testamentary intent in

such cases, is well stated in Smith on Executory Interests, page 281. It is this: 'Where real or personal estate is devised or bequeathed to such children, or to such child or individuals as shall attain a given age, or the children who shall sustain a certain character, or do a particular act, or be living at a certain time, without any distinct gift to the whole class, preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person. For, until the age is attained, the character is sustained, or the act is performed, the person is unascertained; there is no person answering the description of the person who is to take as devisee or legatee.' If then we are to seek for the intention of the testator in the language of his will, we must conclude he gave no vested interest in his residuary estate to any of his children, that the devises were contingent and became vested only, when the youngest child living attained the age of twenty-one years, in such children as were then in life." And so here we are obliged to conclude that the estate given to the children of Edmund and Ann Holmes was contingent and became vested only upon the death of both, and in such children as were then in life.

If there were any need to resort to the context of the will to find support for the foregoing conclusion it is readily discovered in the fifth section of the will. The testator there disposes of the other half of the estate in favor of his daughter Caroline, with power to dispose by will of the whole of her half to her surviving children or their lawful issue, "and if no such child or children or their lawful issue should be living at the time of her death, then to be distributed" either to her brother Edmund or to his children living at the time of her death. Here, when the testator wishes to introduce grandchildren as legatees in remainder, he does so by appropriate words. He carefully includes the lawful issue of such of Caroline's children as may be dead among the ultimate legatees, and again limits to the children of Edmund, without including their issue, the possible enjoyment of Caroline's share in the event of her total failure of issue. It is impossible to resist the conclusion that the testator knew well how to include grandchildren as the objects of his bounty if he so desired, and that when he did not do so it

was because he did not so intend. We sustain the ruling of the auditing judge.

> The decree of the court below is reversed, at the cost of the appellees in the several appeals, and the record is remitted, with direction that the distribution of the fund in the court below be made in accordance with this opinion.