## In re TWADDELL.

(District Court, D. Delaware. June 18, 1901.)

1. BANKRUPTCY—ASSETS—ESTATE DEVISED.

A testator devised certain real estate situate in Pennsylvania to the mother of the bankrupt "for and during the term of her natural life and at the time of her decease to her surviving children equally share and share alike * * * to hold to them, their heirs and assigns, forever." After the death of the testator and during the lifetime of the life beneficiary, one of her children was adjudged a bankrupt. *Held*, that he had a vested interest in the subject of the devise, which passed to his trustee in bankruptcy.

2. SAME.

Mere ability, possessed by one who subsequently becomes a bankrupt, by deed, conveyance, or assignment, or by executory contract, to estop or preclude himself from claiming title to or enjoying property wholly acquired after the execution of such deed or contract, does not constitute "property which prior to the filing of the petition he could by any means have transferred."

3. SAME.

Where the contingency relates to the event, and not to the person, the remainder-man possesses a right or title which may indifferently be considered or termed a vested right in or to a contingent interest or estate,

110 F.—10

or a contingent right to a future interest or estate, and such a right is alienable and transmissible to heirs or personal representatives according to its nature, and consequently passes to a trustee in bankruptcy of the remainder-man.

(Syllabus by the Court.)

Leonard E. Wales, for creditors.
William F. Kurtz, for bankrupt.

BRADFORD, District Judge. The question now for decision was certified to this court by the referee in bankruptcy for this county, under section 39a(5) of the bankruptcy act, together with his finding thereon. It is whether John P. Twaddell had at the date he was adjudged a bankrupt, by virtue of the last will and testament of Jacob W. Horter, any interest or claim in or to certain real estate situate in Pennsylvania transmissible to the trustee in bankruptcy. The finding of the referee is that the bankrupt had not at the time of his adjudication such an interest or claim. The testator died on or about August 4, 1875, and it was admitted at the hearing that he was at the time of his death the owner in fee of the real estate in question. The sixth item of his will, which was duly admitted to probate and recorded in the office of the register of wills for the city and county of Philadelphia, August 9, 1875, is as follows:

"Sixth. I give and bequeath unto my daughter Catherine Twaddell, wife of William Twaddell, for and during the term of her natural life and at the time of her decease to her surviving children equally share and share alike, the following properties, viz., my brick house situate at the southwest corner of Wharton and Hicks streets, in the Twenty-sixth Ward of the said city of Philadelphia, also my three-story brick house situate on the west side of Sixth street, north of Master street, No. 1416, in the Twentieth Ward of the said city of Philadelphia, to hold to them, their heirs and assigns forever."

It appears from an agreed statement of facts that Catherine Twaddell, one of the daughters of the testator, had twelve children, of whom the bankrupt is one, living at the time of the testator's death, all of whom are now living, and that their mother was living at the time of the adjudication in bankruptcy. It is admitted that she is still living. By virtue of section 70 of the bankruptcy act the trustee, upon his appointment and qualification is, subject to a certain proviso and an exception not pertinent to this case, vested with the title of the bankrupt as of the date of the adjudication to all "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Did, or did not, the bankrupt from and after the death of the testator and during the lifetime of his mother have some right, title or interest, vested or contingent, to or in the real estate, which prior to the filing of the petition in bankruptcy he "could by any means have transferred" or which might have been levied upon and sold under judicial process? Either such transferability or such liability to be sold would establish its transmissibility to the trustee in bankruptcy. But it is absolutely essential to the successful assertion of any right on the part of the trustee that the bankrupt should have had at the date

of the adjudication, a claim or interest of some kind, vested or contingent. Mere ability possessed by one who subsequently becomes a bankrupt, by deed, conveyance or assignment, or by executory contract, to estop or preclude himself from claiming title to or enjoying property wholly acquired after the execution of such deed or contract, is not sufficient to constitute "property which prior to the filing of the petition he could by any means have transferred." The Circuit Court of Appeals for this circuit, in the case of In re Wetmore, 108 Fed. 520, in treating this subject, said:

"It is the 'title of the bankrupt, as of the date he was adjudged a bankrupt,' which is 'vested by operation of law' in the trustee; and this title, so far as pertinent to this case, must be to 'property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him.' A bare possibility or mere expectation of acquiring property does not constitute property or a title to property; nor can it be transferred or levied upon. While the right of enjoyment may be uncertain and contingent, it is necessary that an interest or title of some kind be vested in the bankrupt in order that it may pass by operation of law to the trustee. If the contingency or uncertainty be such as relates to the person, and not merely to the event, and he who is to take remains unascertained by name, designation or description, obviously no given individual while so unascertained can be held to have a property right to or in the subject-matter of the gift or limitation. * * * If the bankrupt had an expectant estate it undoubtedly passed to the trustee. But if he had no claim or title, absolute or defeasible, vested or contingent, but merely an expectation of an estate or interest in the future, then there was nothing in him to pass to the trustee. * * * One may have a contingent right to a future interest or estate. So one may have a right in or to a future contingency. But it cannot with legal propriety be affirmed of anyone that he has either a contingent right or a right in or to a contingency unless the person of whom the affirmation is made is ascertained by name, designation or description."

As the controversy here relates to land, the lex rei sitæ governs, and on the question whether the bankrupt had at the time of the adjudication a right, title or interest, vested or contingent, absolute or defeasible, to or in the houses referred to in the sixth item, recourse must be had to the law as declared or recognized by the supreme court of Pennsylvania. In that state any such right, title or interest is alienable by him who has it and liable to execution process. In Drake v. Brown, 68 Pa. 223, the court, through Agnew, J., said:

"It is the settled doctrine in this state that all possible titles, vested or contingent, in real estate, may be taken in execution and sold, provided there be a real interest in the defendant in the execution, legal or equitable."

The requirement in the proviso of "a real interest in the defendant," it should be observed, is an essential part of the proposition laid down by the court. The testator devised the houses to his daughter Catherine Twaddell "for and during the term of her natural life and at the time of her decease to her surviving children equally share and share alike * * * to hold to them, their heirs and assigns forever." The word "surviving" has relation to the death of the testator or to the death of Catherine Twaddell. It cannot relate to both. If it has relation to the death of the testator, the remainder in fee immediately on his death vested in the then living children of Catherine Twaddell, but was liable to open

during her lifetime ·and let in ·after-born children.　Minnig v. Batdorff, 5 Pa. 503; Chew's Appeal, 37 Pa. 23; Ross v. Drake, 37 Pa. 373; Coggins' Appeal, 124 Pa. 10, 16 Atl. 579.　In Minnig v. Batdorff, supra, the court, through Bell, J., said:

"When there is an immediate gift to children, those only living at the testator's death will take; but it is now settled, that where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or of any other person, the limitation will embrace not only the objects living at the death of the testator, but all who shall subsequently come into existence before the period of distribution.　Such a remainder vests in the objects to whom the description applies at the death of the testator, subject to open and let in others answering the description as they are born successively.　As to the latter, the remainder is contingent until they are in esse, but then it immediately vests, and from thenceforth is attended by all the properties incidental to vested estates."

If the word "surviving" has relation to the death of Catherine Twaddell, there is only a contingent remainder in fee to such of her children now or hereafter born as shall survive her.　The contention on the part of the petitioners that, even if the survivency relates to the death of Mrs. Twaddell, the remainder was vested on the death of the testator in her ·children, though liable to be divested by the happening of a condition subsequent, namely, their death during the lifetime of their mother, is opposed to both principle and authority.　While it is true that in one or more cases language, largely if not wholly obiter, is to be found which, taken by itself, lends some color to such an idea, not only the well settled rules and tests for determining whether a given remainder is vested or contingent, but the authorities are fatal to the contention.　McBride v. Smyth, 54 Pa. 245; Chess's Appeal, 87 Pa. 362; Sager v. Galloway, 113 Pa. 500, 6 Atl. 209; Coggins' Appeal, 124 Pa. 10, 16 Atl. 579; Craige's Appeal, 126 Pa. 223, 17 Atl. 585.　Nor is this court prepared to sustain the contention on the part of the petitioners that it is wholly immaterial whether the limitation of the fee after the life estate is a vested remainder, on the one hand, or a contingent remainder, on the other.　The remainder cannot be contingent unless the word "surviving" has relation to the death of the first taker.　On that assumption the limitation is only to such of her children as shall be living at the time of her death.　Under such a limitation it cannot be ascertained until the death of the first taker occurs whether any of the children will take anything.　The happening of that event enters into and is essential to the description of the persons who, if any, will·take under the limitation, and before it happens no right passes to any child which on his or her death during the lifetime of the first taker is capable of transmission under the law of descent.　In McBride v. Smyth, 54 Pa. 245, the court, through Strong, J., said:

"It is impossible to admit that a gift to such of a number of persons as may meet a defined description, is a gift to all the persons, whether they meet the description or not.　The rule of legal construction, as well as the testamentary intent in such cases, is well stated in 'Smith on Executory Interests,' page 281.　It is this: 'Where real or personal estate is devised or bequeathed to such children or such child or individuals as shall attain a given age, or the children who shall sustain a certain character, ·or do a particular act, or be living at a certain time, without any distinct gift to the

whole class, preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person. For, until the age is attained, the character is sustained, or the act is performed, the person is unascertained; there is no person answering the description of the person who is to take as devisee or legatee.' "

The doctrine thus enunciated has uniformly, so far as I am aware, met the approval of the supreme court of Pennsylvania. Coggins' Appeal, 124 Pa. 10, 16 Atl. 579; Craige's Appeal, 126 Pa. 223, 17 Atl. 585. In the law of contingent remainders there is a fundamental distinction between contingency as to the person who is to take and contingency as to the event on the happening of which a right, interest or estate is to be acquired under the limitation over. Where the contingency relates to the event, and not to the person, the remainder-man possesses a right or title which may indifferently be considered or termed a vested right in or to a contingent interest or estate, or a contingent right to a future interest or estate, and such a right is alienable and transmissible to heirs or personal representatives according to its nature.. But where the contingency relates to the person the case is essentially different. A contingent remainder is none the less a remainder because limited to persons not in esse. But such a limitation ex vi termini excludes the alienability or transmissibility of the remainder so long as it remains contingent. If land be devised to one for life and at his death in fee to such of his children as shall survive him, there can be, before his death occurs, no remainder-man in esse having capacity to take. In such a case it would seem that the existence of remainder-men cannot be disassociated from their capacity to take, and that, as such capacity cannot exist before their ascertainment by the death of the first taker, they cannot be regarded as in esse before that event, so far as the alienability or transmissibility of any interest or title under the limitation is concerned. The distinction under discussion, which is also applicable to executory devises and bequests, is clearly recognized in the Pennsylvania cases. In Kelso v. Dickey, 7 Watts & S. 279, the contingency related to the event, and not to the person. The court, through Sergeant, J., said:

"The contingency on which the legatees over were to take was not a contingency annexed to their capacity to take: such, for example, as their living to a certain time; but an event independent of them, and not affecting their capacity to take or transmit the right to their representatives; and such a contingent interest has frequently been decided to be vested so as to be transmissible to representatives."

So, in Hopkins v. Jones, 2 Pa. 69, the contingency attached only to the event, and the court, through the same learned judge, said:

"There is no contingency here that affects the transmissibility. There is a contingency, which affects the right of Rebecca J. Rutter ever to take, but none that affects the vesting of her right or possibility, so as to pass to her representatives on her death before the contingency happens."

In Chess's Appeal, 87 Pa. 362, the court, through Sharswood, J., said:

"In the common case of a legacy or gift to A., and on his death to B., no one doubts that both interests, the present and the future, vest together at the same instant. Attaching a contingency to the gift of the second bequest

ought not and does not affect the case unless that contingency relates to the capacity of the second legatee or donee to take. In a legacy to A., and if he dies before attaining the age of twenty-one, then to B., the interest of B., though dependent upon a contingency, is transmissible. It would be different if the gift over was to B. at twenty-one, for if he should die before attaining that age, he could never take, and could therefore have nothing to transmit."

In Sager v. Galloway, 113 Pa. 500, 6 Atl. 209, the contingency related to the person. The court, through Trunkey, J., said:

"The property is devised to a person in fee when he is twenty-one years of age; and any person under that age, though answering the description in all other respects, can take nothing, and no person can take through or under him. * * * The remainder is not limited to take effect immediately on the death of the testator's children. It is limited to take effect after their decease, and in favor of a person when he attains a given age. Should he die before arriving at that age no person claiming under him, by descent or otherwise, would have right of possession or property. Although the plaintiff is the person who will be entitled to the property if he lives long enough, the devise passes to him when he arrives at the age of twenty-one years. The particular age is made a constituent part of the description of the object of the devise, and the remainder cannot vest before. The person is not ascertained before the given age."

So, in Coggins' Appeal, 124 Pa. 10, 16 Atl. 579, the contingency attached to the person. The court, through Paxson, J., said:

"The gift is to those 'who shall have attained or shall attain the age of twenty-five years.' * * * A grandchild who dies before arriving at twenty-five takes no interest; nothing which he can dispose of by will or otherwise; nothing which can descend to his heirs. * * * The provision in regard to age is descriptive of the persons who shall take under the will, for no one can tell until that time arrives who will be entitled."

Such also was the nature of the contingency in Craige's Appeal, 126 Pa. 223, 17 Atl. 585. The court, through Green, J., said:

"There are no words of gift except those which also describe the legatees. * * * It is therefore not the case of a previous gift and a postponement of the time of payment. but an immediate and direct gift to a class of persons who must fulfill the description contained in the very words of the gift in order to take it at all. They are not donees in any sense unless they are children of Edmund and Ann, living at the death of Edmund and Ann."

If the children who may take cannot be ascertained until the death of Mrs. Twaddell, and if they have no right, title or interest which can pass from them by alienation or descent during her lifetime, I fail to perceive that one of them who becomes a bankrupt during her lifetime could under such a limitation have any "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." There would be a possibility, probability or expectation on his part of acquiring on the death of his mother an interest or estate, but during her lifetime no right or title in him, vested or contingent, to any interest or estate, absolute or defeasible, transmissible to a trustee in bankruptcy. Bristol v. Atwater, 50 Conn. 402; In re Hoadley (D. C.) 101 Fed. 233; In re Gardner (D. C.) 106 Fed. 670.

But on a careful review of the Pennsylvania decisions I have, though with some hesitation, reached the conclusion that the word "surviving," as employed by the testator in this case, must be re-

garded as relating to the time of his death, and consequently that the children of Mrs. Twaddell living at that time took a vested remainder in fee. In Pennsylvania the law strongly favors the early vesting of estates. In Letchworth's Appeal, 30 Pa. 175, the court, through Lowrie, C. J., said:

"The law always and naturally inclines to attribute the real and substantial ownership of property to some existing person, even in the case of a trust, and never to leave any part of it in abeyance. In other words, it always inclines to treat the whole interest as vested, and not as contingent; and therefore, in case of doubt or mere probability, it declares the interest vested."

And in Chew's Appeal, 37 Pa. 23, the court, through Strong, J., said:

"A remainder is always to be considered vested, rather than contingent, if the words of the will creating it are capable of such a construction."

The remainder is limited on the death of Mrs. Twaddell to "her surviving children," and not to her children "surviving her" or "then living." The words "her surviving children" are susceptible of two constructions, neither of which would do violence to the language of the testator. They may mean her children surviving her, or her children surviving the testator. It is not stated whom the children are to survive. There is no other provision in the will which can serve to shed light on this point. The words "at the time of her decease" are in no way coupled with the survivency and do not postpone the vesting of the remainder, but only fix the time when it shall take effect in possession or enjoyment. Chew's Appeal, 37 Pa. 23; Minnig v. Batdorff, 5 Pa. 503. It is a general rule, liable, however, to be controlled by particular expressions in the will clearly indicating an intention to the contrary, that words of survivorship are to be referred to the death of the testator, not only where there is an immediate gift to survivors in the absence of any precedent life or other particular estate, but also where the limitation is after such a precedent estate. Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 373; Woelpper's Appeal, 126 Pa. 562, 17 Atl. 870. This rule of construction prevents the exclusion from the testator's bounty of the issue of such of the children of the first taker as die during the continuance of the precedent estate, and the partial intestacy of the testator which would thereby result in many cases, were the words of survivorship referred to the death of the first taker. The rule accords with the presumed intention of the testator and should be applied, unless it would defeat his actual intention as clearly shown by the language of the will. Here there are no particular expressions indicating an intent that the words of survivency should not relate to the testator's death. The case stands baldly on the words "her surviving children." Under the Pennsylvania decisions, "surviving" is referable to the testator's death. I am unable to distinguish this case in principle from Ross v. Drake, 37 Pa. 373. There the testator provided as follows:

"Item. It is further my will that a like sum of seven hundred dollars remain in my real estate, the interest of which shall be paid annually to my son John Ross during his natural life, and such part of the principal sum as my executors may deem necessary and proper; and if any part of the said

sum of seven hundred dollars, or interest thereon, should remain unexpended at the decease of my said son John, it is my will that the same be divided equally among his surviving children, share and share alike. But if my said son John should prefer having the said sum of seven hundred dollars laid out in land for his use, then it is my will that my executors purchase a tract of land, the selection of which shall be agreeable to him, and have the title so made that he shall have the occupancy of the same during his natural life, and at his decease to go to his surviving children, their heirs and assigns forever, to be equally divided amongst them, share and share alike. Should the latter be the choice of my said son John, it is then my will that my son Washington advances the said sum of seven hundred dollars in one year after my decease, or as soon after as it may be wanted for the purpose of making the said purchase."

John Ross, the son, chose to have the sum of money mentioned laid out in the purchase of land for his use, and pursuant to the above clause of the will, land of his selection was purchased for his use during life, and for the ulterior devisees in fee, as therein directed. The land was limited to him "during his natural life," and at his decease "to his surviving children" in fee as tenants in common. While here the land is limited to a daughter for life and at her death "to her surviving children" in fee, there it was limited to a son for life and at his death to "his surviving children" in fee. No argument or consideration can be advanced in this case to show that the words "her surviving children" mean "her children surviving her," which was not equally applicable to show that the words "his surviving children" meant "his children surviving him." The two cases are in substance identical. It was held that the word "surviving" related to the death of the testator, and that a child of the first taker who died intestate after the death of the testator, but before the death of the first taker, had a vested interest in the land which on her death descended to the plaintiff in the ejectment suit, who was her son. The court, through Strong, J., said:

"The gift of the property in controversy in this case is to be treated as a devise of realty. * * * The argument is that the testator intended only such children as should survive the tenant for life, and be in existence at the time when the remainder was limited to take effect in possession. This presents the inquiry, to what period does the word 'surviving' relate? Is it to the death of the first taker, or the death of the testator? If there be an immediate limitation by will of an estate to survivors of a class, or of individuals named, to take as tenants in common, a limitation not expectant upon the determination of a prior interest, there is but one period to which the survivorship contemplated can refer, and that is the death of the testator. But if there be an estate for life carved out, and a limitation of the remainder to a class or to several persons named, or to their survivors, to take as tenants in common, there are two periods to which the survivorship may refer, the death of the tenant for life, and that of the testator. It has often been made a question, to which of these two periods the will is to be construed as pointing. Down to the time of our revolution, and for at least one hundred years, it was held in England, and so decided in many cases, that the period intended is that of the death of the testator, and the doctrine was applied indiscriminately to bequests of personality and devises of realty. * * * Whether the reasons upon which this rule of construction was founded were sound or not, is of little importance, after the long-continued adherence which the English courts gave to it. In regard to bequests of personalty, indeed, a departure was made from it by Sir John Leach in Cripps v. Wolcott, 4 Madd. 11, and he has been followed in a few other cases. * * * But the novel doctrine of Sir John Leach has not, even in England, been applied to the construction of devises of realty. * * * Such is the

state of the law in England on this subject. It has been regarded as unsettled, ever since the case of Cripps v. Wolcott. In Pennsylvania, the new doctrine asserted in that case has been distinctly repudiated, and the old rule established before our revolution has been recognized as law. Such was the ruling in Johnson v. Morton, 10 Pa. 245, and a similar rule of construction was applied to a bequest of personalty in Buckley's Adm'rs v. Reed, 15 Pa. 85. It has at least these advantages, that it corresponds with the usual presumption in cases of doubt, that legacies and devises are vested, and that it prevents the disinherison of a testator's descendants, by the unanticipated death of their immediate ancestor, between the death of the testator and the time fixed for the distributive enjoyment. To this may be added, that it sometimes prevents the happening of an unforeseen intestacy."

If Ross v. Drake was rightly decided, it is controlling here; for no distinction can be drawn between the two cases. It has never, so far as I am aware, been held by the supreme court of Pennsylvania that Ross v. Drake was wrongly determined; nor has the doctrine of that case ever been denied or questioned by that tribunal. On the contrary, the case has repeatedly been cited with approval. The contention is made on the part of the bankrupt that the doctrine of Ross v. Drake practically was repudiated in Woelpper's Appeal, 126 Pa. 562, 17 Atl. 870. This contention cannot, in my opinion, be sustained. Not only was there a substantial difference between the testamentary provisions involved in the two cases, but the rule applied in the earlier case was expressly recognized in the later. The court, through Mitchell, J., referred to the rule that "where there is a devise for life with remainder over to survivors, the word survivors shall be taken to refer to the period of the testator's death," and to Johnson v. Morton, 10 Pa. 245, as "an excellent illustration of the rule, and of the principles on which it should be applied," and to Ross v. Drake as a case which, "though a stronger case in favor of the application of the rule, is not essentially different in principle." The court, further referring to Ross v. Drake, Johnson v. Morton, and other cases, said:

"We concede them all their legitimate authority in conceding that they establish the general rule that the phrase 'surviving brothers and sisters' means surviving at the death of the testator, and that it shall be so construed unless it clearly appears that the testator meant it to refer to a different period. As already shown, the testator in the present case plainly meant to refer to the time of his daughter's death, and his actual intent being thus entirely clear, there is no room for any presumption, and the cases establishing that presumption have no application."

But here there are no particular expressions to rebut the presumption and, as before stated, the case stands baldly on the words "her surviving children." In re Hoadley, 2 Nat. Bankr. N. 704, 101 Fed. 233, and In re Wetmore, 99 Fed. 705; Id., 108 Fed. 520, are essentially unlike this case, in that in each of them the words of survivorship expressly and unmistakably related to the death of the first taker. For the reasons given, I am of the opinion that the word "surviving" in the testamentary provision in question has relation to the death of the testator; that on the happening of that event the then living children of Mrs. Twaddell acquired a vested remainder in fee as tenants in common, though liable to open and let in after-born children; and that consequently the bankrupt had, by virtue of that provision, at and prior to the date of the adjudication, an interest

and estate in the houses constituting property which prior to the filing of the petition he could have transferred and which might have been levied upon and sold under judicial process against him. The finding and order of the referee are therefore set aside, with directions that he cause the foregoing interest and estate of the bankrupt to be included in his schedules in bankruptcy, and thereafter disposed of according to law.