## Scott's Estate (No. 1).

*Will—Construction—Vested and contingent interest—"Then living"—Children—Grandchildren.*

The general rule is that such expressions as "surviving brothers," "who may then be living" and similar words are construed to relate to the death of the testator unless from the language of the will it is clear that they refer to some other date. If the intention is clear, however, that must control, and the particular words be given the effect which the testator designed. If this intention can be ascertained the consideration that the disposition made of his property by the testator is unequal or inequitable must be left out of the case.

Under a bequest to children, grandchildren are excluded unless it appear from the will that it was the intention of the testator to make provision for such relatives.

Where real or personal estate is devised or bequeathed to such individuals as shall attain a given age or who shall sustain a certain character or do a particular act or be living at a certain time without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is contingent on account of the person, for the reason that until the age is attained or the character is sustained or the act is performed the person is unascertained.

The testator owned two parcels of land, one of which he directed to be sold and the proceeds divided among the children of his first wife in the shares set forth in the will. As to the other piece of real estate it was provided that after the decease of his wife and the arrival of his youngest son at the age of twenty-one years the executors might be required by a majority of those having an interest therein to sell and dispose of the same. Of the proceeds of the sale $1,000 was to be given to each of his sons G. and W., and to his daughters C. and S., the same amount which he gave to each of their older sisters out of the first piece, with the further direction that in case there should be a surplus over the distribution as thus arranged, such surplus was to be "equally divided amongst all my children that may be then living." *Held*, that the interests in the surplus of the testator's estate were contingent, and vested only in his children who were then living when the land was sold, and the surplus thereby created.

Argued April 14, 1908. Appeal, No. 4, April T., 1908, by William W. McBride, Administrator of Emily S. Morgan, deceased, et al., from decree of O. C. Allegheny Co., Dec. T., 1906, No. 70, sustaining exceptions to adjudication in Estate of

John Scott, deceased. Before RICE, P. J., HENDERSON, MOR-
RISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that John Scott died in October, 1859, leaving certain real estate which he directed his executors to sell.

The material portions of John Scott's will were as follows:

"To my son John Hervey Scott the sum of one thousand dollars, and then having divided the remainder into five equal parts, pay one of said equal parts to each of my five daughters, Mary Jane, Sarah, Emily, Harriet and Ellen,—but myself having given to my daughter Mary Jane five hundred dollars, and to Sarah two hundred dollars, I direct that one-half of said sums be deducted from their proper shares of said division and added in equal shares to shares of their other three sisters. And I further will and direct that at any time after the decease of my wife, my said executors may be required by a majority of those having an interest therein to sell and dispose of all that portion of my real estate on which I now reside together with all the personal estate then having properly belonged to my said wife, and divide the proceeds of such sale in manner and proportions as follows, viz:

"To each of my sons George, and Wilson, one thousand dollars and to each of their sisters Clara and Seeneth the same amount that had been awarded to each of their elder sisters under the first distribution as above directed, and in the event of there being a surplus over and above the said distribution as above directed, I order and direct that said surplus be equally divided amongst all my children that may be then living, and I further order and express as my will that in the event of my beloved wife being removed by death, previous to the time at which my youngest son would have arrived at the age of twenty-one years said sale and distribution shall not take place until that period shall have arrived.

"My oldest sons Samuel and James being already provided for they are not to be held as having any further interest in my estate except as in the contingency above provided for."

The question involved was whether the residue of testator's estate vested in all testator's children who were living at the time of his death, or in those only who were living at the time of the executor's sale. The auditing judge held that the estate was vested in the children who were living at the time of his death, and awarded the surplus among all of the testator's descendants.

Exceptions to the adjudication were sustained by the court.

*Error assigned* was in sustaining exceptions to adjudication.

*J. S. Ferguson*, with him *A. C. Johnson*, for appellants.

*G. C. Lewis*, with him *George W. Flowers* and *W. H. S. Thomson*, of *Thomson & Thomson*, for appellees.

OPINION BY HENDERSON, J., October 12, 1908:

The question presented by this appeal is whether the residue of the testator's estate vested in all his children who were living at the time of his death or in those only who were living at the time of the sale. The appellant contends that the words of the will "then living" refer to the time of the testator's death, while the appellees assert that the devise of the residuary estate was contingent and only became vested at the date of the sale. The testator owned two parcels of land, one of which he directed to be sold and the proceeds divided among the children of his first wife in the shares set forth in the will. As to the other piece of real estate it was provided that after the decease of his wife and the arrival of his youngest son at the age of twenty-one years the executors might be required by a majority of those having an interest therein to sell and dispose of the same. Of the proceeds of the sale $1,000 was to be given to each of his sons, George and Wilson, and to his daughters, Clara and Seeneth, the same amount which he gave to each of their older sisters out of the first piece, with the further direction that in case there should be a surplus over the distribution as thus arranged, such surplus was to be " equally divided amongst all my children that may be then living." This will

like all others must be interpreted in the light of the intent of the testator and this means the actual intent as discovered by a consideration of the whole will. It was said in Woelpper's Appeal, 126 Pa. 562, to be the great general and controlling rule that the intent of the testator shall prevail and that the canons of construction are subservient to this rule and made to aid, not to override it. Even technical words are diverted from their technical sense where it was clearly the intention of the testator to give them a different meaning. Much less should such phrases as "then living" be accorded an unbending strength when they have no technical significance. The general rule undoubtedly is that such expressions as "surviving brothers," "who may then be living" and similar words are construed to relate to the death of the testator unless from the language of the will it is clear that they refer to some other date. If the intention is clear, however, that must control, and the particular words be given the effect which the testator designed: Fox's Appeal, 99 Pa. 382; Mulliken v. Earnshaw, 209 Pa. 226. If this intention can be ascertained the consideration that the disposition made of his property by the testator is unequal or inequitable must be left out of the case. Except as forbidden by law he may do what he will with his own and it is not the right of the court to substitute the wish or desire of any other person for that of the testator because it seems a fairer distribution of the estate. We are not at liberty under the authorities to include grandchildren or issue in the word "children." That the latter word may have the larger signification has been held in some cases where it was evidently used as coextensive with "issue" or where there were no children to answer the description, but where the testator had children there is no room for the assumption that grandchildren were also intended. Under a bequest to children, grandchildren are excluded unless it appear from the will that it was the intention of the testator to make provision for such relatives. But this construction can only take place where the intention is clear or the implication necessary as in a case where there are no other children than grandchildren or where there is a limitation over in default of issue: Hallowell v. Phipps, 2 Whart. 376; Stein-

metz' Estate, 194 Pa. 611. This will does not disclose an intention of the testator to provide for the grandchildren and no necessity exists for such interpretation because there were children surviving to whom the words of the devise applied.

The devise of the surplus was not to all of the testator's children, but to all of them "that may be then living." It was not a gift to the children as a class but to such of them as might be living at the occurrence of an event contemplated by the testator. This event was evidently the sale of the land and the distribution of its proceeds, which were regarded as one transaction. There could, of course, be no distribution until after the death of the widow and the youngest son had arrived at twenty-one years of age and a sale pursuant to the direction of a majority of the persons interested, nor until the payment to the sons, George and Wilson, and the sisters, Clara and Seeneth, of the amounts they were entitled to from the sum realized from the land. When the surplus is thus created and determined it is distributable among those of the testator's children living at that time. The connection in which the word "then" is used indicates, we think, that there could not have been any other period in contemplation except the time when the land was actually sold. This view is strengthened by the provision of the succeeding clause of the will that the sons, Samuel and James, were not to have any further interest in the estate "except as in the contingency above provided for." This has evident reference to the duration of life of these sons until by consent of a majority of the testator's living children the land should be sold to carry out the provisions of the will. The interests thus created were contingent, for until the happening of the event producing the fund to be distributed it could not appear that any one of the children would be in the class of those to whom the gift was made. It is a well established rule that where real or personal estate is devised or bequeathed to such individuals as shall attain a given age or who shall sustain a certain character or do a particular act or be living at a certain time without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the

devisee or legatee, the interest so devised is contingent on account of the person, for the reason that until the age is attained or the character is sustained or the act is performed the person is unascertained: Craige's Appeal, 126 Pa. 223; Rudy's Estate, 185 Pa. 359; Mulliken v. Earnshaw, 209 Pa. 226; Smith on Executory Interests, 281. Such is the import of all the later authorities in this state. We are obliged to hold accordingly that the interests in the surplus of the testator's estate were contingent and vested only in his children who were living when the land was sold, and the surplus thereby created.

The decree is affirmed.