## WOODS v. LITTLE.

(Circuit Court of Appeals, Third Circuit. January 9, 1905.)

### No. 30.

1. BANKRUPTCY—VESTED REMAINDERS—DUTY TO SCHEDULE.

A bankrupt's grandfather bequeathed two-thirds of the income of his estate to his widow for life, and the other one-third to his daughter E. for life or before marriage, and that in the event of the death of the widow before the marriage or death of E. two-thirds of the income should be paid to E. and the balance to his daughter M. A subsequent clause of the will provided that at the marriage or death of E. the remainder of the estate should be sold, and the proceeds divided equally among all of his children, share and share alike, except his son G., and that, if other of his children should die, leaving children living at testator's death, the share of such deceased child should be given to his or her child or children. Testator left him surviving a widow and five children. One of the testator's sons other than G. thereafter died intestate, unmarried, and without issue, as did his daughter M., who left four children, one of whom was the bankrupt. *Held*, that the bankrupt had a vested interest in his grandfather's estate, which he was required to schedule as a part of his estate in bankruptcy.

**2. SAME—INTEREST IN ESTATES—FAILURE TO SCHEDULE—FRAUD—DISCHARGE.**

Where the question whether a bankrupt's interest in his grandfather's estate was vested or contingent was difficult of solution, and the bankrupt had previously been advised by counsel that he had no interest in his grandfather's estate on which he could raise money, his failure to schedule such interest as a part of his estate in bankruptcy did not preclude his discharge on the ground that he had "knowingly and fraudulently" concealed, while a bankrupt, property belonging to his estate in bankruptcy.

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Charles A. Woods, for appellant.

H. H. Rowand, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. The appellee, Frederick Vogel Little, on November 9, 1902, filed his voluntary petition in bankruptcy. With his petition were filed schedules in due form. The debtor was duly adjudged a bankrupt, and the matter referred to a referee. On February 18, 1903, the bankrupt filed his petition for discharge. On proceedings had thereon, opposition was made to the said discharge by the appellant, Edward A. Woods, the principal creditor of the bankrupt. Formal objections to the discharge of the bankrupt were filed March 24, 1903, two of which were as follows:

"2nd. Knowingly and fraudulently concealed while a bankrupt, from his trustee, property belonging to his estate in bankruptcy, viz., valuable interests in the estate of his mother, Martha J. Little, deceased, and his grandfather, William Agnew, deceased, now in the hands of the Girard Trust Company, of Philadelphia, Pa., executor and trustee, said interests consisting of both real and personal property."

"Fourth. Knowingly and fraudulently made a false oath in relation to said proceedings in bankruptcy, viz., in his said schedules, signed and sworn to, Schedule B. Form 4, in averring that he has no property in reversion, remainder or expectancy, including property held in trust for the debtor, or subject to any right or power to dispose of or to charge whereas said averments were false and untrue, said bankrupt having valuable interests in both real and personal property, through the said estates of his grandfather, William Agnew, deceased, and his mother, Martha J. Little, deceased, which said bankrupt well knew."

These objections were referred to the referee, as a special master to take testimony and make report thereof to the court and of his findings of fact, together with his recommendation in favor of or against said discharge. Pursuant to said order, a hearing was had before the referee, and testimony taken pertinent to the questions raised by said second and fourth objections. Pending this reference, a petition was presented to the referee, by the trustee, for an order on the bankrupt to execute an assignment or conveyance of his interest in certain property referred to in the second objection above recited. From the evidence before the referee, the following facts appear:

William Agnew, the grandfather of the bankrupt, died in or about the year 1866, having made and executed his last will and testament, which was after his death duly admitted to probate. It appears that the estate of the said testator consisted of personal property worth,

approximately, $33,000, and certain real estate, consisting of a house and lot in the city of Philadelphia. The will, after first bequeathing the sum of $500 to his wife and his daughter, Elizabeth, respectively, devises the house and lot to his wife for life, and after her death to his daughter, Elizabeth, for life, or until her marriage, and provides that at the marriage or death of his daughter, Elizabeth, the said house and lot shall fall back as part of the residue of the estate and be sold, and the proceeds divided amongst his children as afterwards in said will is directed. The will further provides:

"Fifth. I give and bequeath to my dear wife and to my daughter, Elizabeth, the income of my whole estate to be enjoyed by my said wife during her lifetime and by my daughter, Elizabeth, until she marries, in the proportion of 2/3 of said income to be for the sole use of my said widow, and 1/3 for the sole use of my said daughter, Elizabeth, and in the event of the death of my said widow before the marriage or death of my said daughter, Elizabeth, then my will is that I direct that 2/3 of the income of my said estate be for the use of my said daughter, Elizabeth, and given to her so long as she remains unmarried, and the remaining 1/3 be paid to my daughter, Mary Jane Little. But at the marriage of my said daughter, Elizabeth, or at her death, then I direct that my whole estate, both real and personal, not disposed of by this will, shall be sold by my executors, and the proceeds of it divided equally amongst all my children, share and share alike, except my son, George. * * * And if other of my children should die leaving children living at my death, I desire and direct that the share of each deceased child shall be given to his or her child or children, as the case may be."

There were living at William Agnew's death, a widow and five children, viz., Elizabeth Agnew, Martha Jane Little (the bankrupt's mother), George W. Agnew, James B. Agnew, and Harris S. Agnew. The said James B. Agnew has since died, intestate, unmarried, and without issue, and said Elizabeth Agnew is living and unmarried, and about the age of 56 years. The testator's widow died in the year 1874. Martha Jane Little died about the year 1875, leaving four children, one of whom was the bankrupt. The referee, in his report, says:

"The learned counsel for the bankrupt strenuously contends that the interest of the bankrupt under the will of his grandfather, William Agnew, was contingent and of such a character as did not pass to his trustee under the provisions of the bankruptcy law. After a careful consideration of the very numerous and in some instances seemingly conflicting authorities upon the subject of contingent interests, I am of opinion that the interests of the children of William Agnew in his estate were vested interests and not contingent under the terms of his will, and that the interest of said Martha Jane Little at her death descended to and became the property of her children, including the bankrupt in this case. See, In re Twaddell, 6 Am. Bankr. Rep. 539, 110 Fed. 145, where most of the cases on the subject of vested and contingent interests are cited and discussed by Judge Bradford, in delivering the opinion. An order may be drawn directing the bankrupt to execute a transfer and conveyance of his interest in the property, found by this opinion to belong to him, in such form as may be approved by counsel and the court hereafter."

This finding and order of the referee was afterwards approved by the learned judge of the District Court, and the said bankrupt ordered and directed to execute and deliver to the said trustee in bankruptcy a proper assignment and conveyance of his interest in the property referred to.

In the matter of the petition of the bankrupt, for his discharge, the said referee, as special master, took testimony, in addition to that already recited, bearing upon the right of the bankrupt to claim his discharge, including that of the bankrupt himself. From this testimony, it appears that from the time the bankrupt came of age, in 1877, until the death of his father, in 1899, the income from the one-third interest of his mother in her father's personal estate, was, by assignment, paid to his father, or for his father's use in keeping up certain policies of life insurance. At all events, the bankrupt's one-twelfth interest in said income was not paid to him until after his father's death. Between that time and the filing of his petition, the bankrupt says he received half-yearly installments of $60 or $70 from the Girard Trust Company, the trustee of his grandfather's estate. He also acknowledges having told the said Woods, the objecting creditor, that he had some contingent interest in his grandfather's estate. He also testifies that in '93 or '94, he had applied to counsel in Philadelphia, to see whether he could raise money upon his interest in his grandfather's estate, and received the opinion that he had no interest which he could transfer or convey; in other words, that his interest was a contingent and not a vested interest. That this opinion was given him, is not denied.

The sole question to be determined upon the petition for the bankrupt's discharge, was, whether he honestly believed, at the time of making his schedule, that he had no vested interest in his grandfather's estate, which he could assign or transfer to the trustee, and that his interest was only a contingent one, as stated to him by his counsel, and not available for his creditors. Whether the bankrupt "knowingly" and "fraudulently" concealed his interest in his grandfather's estate, under the circumstances, is a question of intent addressed to the sound judgment of the court. The learned judge of the court below filed the following opinion upon the exceptions to the referee's report:

"After a careful consideration we are constrained to differ from the conclusion reached and recommended by the special commissioner. Without discussing in detail the particular facts and circumstances of this case, we are of opinion the failure of the bankrupt to return in his schedules the interest complained of, is not necessarily attributable to a fraudulent purpose. Indeed the question of whether he had such an interest as passed under the bankrupt law was not easy of solution. The question of his right to discharge is a close one, but on the whole, we incline to the opinion a discharge should be granted. It may accordingly be prepared."

This judgment of the court below, involving as it does a reversal of the opinion of the learned referee, was presumably the result of a more than ordinarily thorough consideration of the whole case. The question of discharge is one addressed to the sound judicial discretion of the judge. With that discretion, we would be loth to interfere, except in a case amounting to an abuse thereof. A careful review of all the evidence in this case does not convince us that a reversal of the judgment below is required at our hands.

The order of discharge is therefore affirmed.