In re McCREA.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

No. 204.

1. BANKRUPTCY — GROUNDS FOR REFUSING DISCHARGE — FAILURE TO KEEP BOOKS.

When a bankrupt was an employé and not engaged in any business of his own, his failure to keep books showing his financial condition does not indicate a fraudulent intent which justifies the refusal of his discharge.

2. SAME—MAKING FALSE OATH.

The fact alone that a bankrupt failed to schedule an interest in the estate of his deceased father is not necessarily attributable to a fraudulent intent, so as to justify the refusal of a discharge on the ground of his making a false oath in verifying his schedules, when by the will of his father the property was left in trust; and the question whether or not the bankrupt had an interest therein which was transferable was involved, and he, moreover, claimed to have transferred all of his interest in the estate to his wife while solvent.

3. SAME.

A bankrupt is not guilty of making a false oath because he omits from his sworn schedule securities which are worthless.

Appeal from the District Court of the United States for the Northern District of New York.

Appeal from an order of the District Court, denying the application of a bankrupt for his discharge.

John R. Keeler, for appellant.
George B. Draper, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. Augustine L. McCrea, having been adjudicated a bankrupt, applied in due season for his discharge. A creditor objected upon the following grounds: (1) That the bankrupt had committed an offense punishable by imprisonment under the bankruptcy law in knowingly and fraudulently making a false oath. (2) That he had fraudulently destroyed, concealed, and failed to keep records or books of account. (3) That he had failed to obey a lawful order of the referee for the production of books and papers. The District Court referred the matter to a special master, who reported that the creditor had failed to sustain his objections, and that the bankrupt was entitled to his discharge. The court, however, declined to confirm this report, sustained the creditor's objections, and denied the discharge. The bankrupt was entitled to his discharge as a matter of right, unless debarred upon one of the statutory grounds specified by the creditor. We will consider these grounds in their inverse order.

It is charged that the bankrupt disobeyed an order of the referee requiring him to produce certain books and papers. He produced some papers, and explained that others were lost or had been destroyed in a fire. He was not proceeded against for contempt, and the special master, who was also the referee issuing the order, was apparently satisfied that his explanation was correct, and found that he did not disobey the order. Upon an examination of the record we reach no different conclusion. While the attitude of the bankrupt upon his examination was the opposite of that of a frank witness, a finding that he intentionally violated the referee's order would be unwarranted.

The next objection to the discharge was that the bankrupt fraudulently concealed and failed to keep books of account showing his financial condition. There was no evidence that the bankrupt concealed any books for it did not appear that he kept any. He was the superintendent of a mine. His personal business did not require the keeping of books. His failure to keep them indicated no fraudulent intent.

The real question in the case, then, is raised by the first objection—whether the bankrupt was guilty of an offense under the bankruptcy law. The offense charged was that of making a false oath with respect to his property. The objecting creditor claimed that he knowingly and fraudulently withheld from his schedule of assets two items: (1) His interest in his father's estate. (2) His stock in the Standard Pyrites Company. The father of the bankrupt died in 1898, leaving a will in which he left his property in trust during the lives of the trustees. After providing for certain payments from the income to the testator's wife and daughter, the will directed the division of the remaining income among his children, including the bankrupt. Upon the death of either the wife or daughter during the existence of the trust the remainder income is increased. The will further provides that, upon the termination of the trust, the principal estate shall be divided among the children then living and the issue of deceased children. There was no evidence concerning the value of the estate or

the income thereof, except that the bankrupt's wife had received in the aggregate $172 therefrom. The real estate described in the will was situated in New York. The inquiry, then, is whether this interest of the bankrupt was property which passed to the trustee in bankruptcy and which should have been included in the schedule of assets, if not previously conveyed away.

With respect to the principal estate there is ground for two contentions: (1) It may be urged that the right of the bankrupt to take was wholly dependent upon the contingency that he outlive the surviving trustee—that it cannot be determined until the death of the trustee who the remaindermen will be. Such an interest in many jurisdictions would be held to be a mere contingent remainder and not "property," the title of which vested in the bankrupt, within the meaning of the bankruptcy law. See In re Twaddell (D. C.) 110 Fed. 147; In re Wetmore, 108 Fed. 523, 47 C. C. A. 477. (2) It may be contended that a devise of this character constitutes a vested and alienable remainder subject to be defeated by the contingency that the bankrupt may not outlive the trustees. The New York decisions are controlling with respect to the title to said real estate, and, although by no means uniform, seem to support the second contention. See Re Hoadley (D. C.) 101 Fed. 233. Moreover, in applying these decisions, we are met by the further inquiry whether the provisions of the will constituted a gift or a direction to divide. It is unnecessary for us to decide these questions. For the purposes of this case it is sufficient to point out their involved character.

The bankrupt's interest in the income is of a less uncertain nature. This interest seems to be vested and alienable. If not conveyed away, it undoubtedly should have been included in the bankrupt's schedule. The bankrupt, however, claims that some years before the bankruptcy proceedings, and before the creation of the debt due the objecting creditor, he conveyed all his interest in his father's estate to his wife in consideration of love and affection. He failed to produce the conveyance, and his testimony was insufficient to establish the due execution and delivery of a legal conveyance. But, if certain interests in the estate of the bankrupt's father should have been included in the schedule of assets, it does not necessarily follow that the bankrupt knowingly and fraudulently made a false oath when he verified the schedule which did not mention them. It was not obvious what interests belonged to the bankrupt or that they were transferable. Moreover, as we have pointed out, the bankrupt claims that he did not own those interests. Informality in the conveyance and its delivery might have rendered it illegal, and still not affect the bankrupt's good faith. That but very little income had ever been received did not affect the character of the interests as property, but did have a bearing upon the bankrupt's fraudulent intent. Taking into consideration all the testimony and all the circumstances, we cannot say that the creditor has clearly shown that the bankrupt fraudulently and knowingly made a false oath in not referring in his schedule to his interest in his father's estate.

The following language quoted with approval by the Circuit Court of Appeals of the Third Circuit in Woods v. Little, 134 Fed. 232, 67 C. C. A. 160, seems applicable here:

"Without discussing in detail the particular facts and circumstances of this case, we are of opinion the failure of the bankrupt to return in his schedule the interest complained of is not necessarily attributable to a fraudulent purpose. Indeed, the question of whether he had such an interest as passed under the bankrupt law was not easy to solution. The question of his right to discharge is a close one, but, on the whole, we incline to the opinion a discharge should be granted."

And as said in Re Wetmore (D. C.) 99 Fed. 703:

"The burden is upon the exceptant to prove the allegation of fraud to the satisfaction of the court, and this burden she has not sustained. The best that can be said about the testimony is that the existence of a fraudulent intent to conceal may be in doubt. But, considering the technical nature of the arguments in support of the propositions that the interest of the bankrupt under his father's will was a vested interest, and that he now derives his title to the fund from that instrument and not from the will of his mother, the bankrupt can hardly be charged with fraudulent concealment of his interest because he may not have understood its true legal paternity. Merely to omit property from his schedule of assets would rarely be enough to prove a fraudulent intent on the part of the bankrupt."

The further contention of the objecting creditor that the bankrupt made a false oath by verifying his schedule without including his shares in the Standard Pyrites Company requires little consideration. While it appears that this stock stands in the name of the bankrupt, it also appears that it is pledged as collateral, and that the property of the corporation has been disposed of upon the foreclosure of a chattel mortgage. There is nothing to show that this stock—and much more the bankrupt's equity in it—is of the slightest value. A bankrupt is not guilty of making a false oath when he omits from his sworn schedule securities which are absolutely worthless. The language of Judge Coxe in Re Eaton (D. C.) 110 Fed. 733, applies:

"There is nothing to show the value of the stock * * * when the schedules were filed. It may have become utterly worthless at that time. It had been transferred to a trustee who was authorized to sell it to satisfy unpaid assessments. A receiver had been appointed of all the bankrupt's property, including the stock. * * * In these circumstances a perfectly honest man might have thought that the stock was of no value and have forgotten to mention it in his schedules."

See, also, Matter of Pearce, 21 Vt. 611, Fed. Cas. No. 10,873.

We conclude, therefore, that the report of the special master who heard the witnesses and found that the creditor had failed to sustain his objections should have been confirmed by the court, and that the bankrupt should have received his discharge.

Only the matter of costs remains to be considered. As already stated, the bankrupt was not a frank witness. If discharges were granted only as rewards to bankrupts who freely furnish information to their creditors, this bankrupt would be pre-eminently not entitled to one. Undoubtedly this attitude brought upon him the action of the District Court: and, while we think the bankrupt entitled of right to his discharge and consequently set aside the action of the District Court, we are not inclined to require the objecting creditor to pay the costs of this appeal.

The order of the District Court is reversed, without costs.