In re Frank G. MORDENTE, Debtor.

**S–P DRUG CO., INC., Plaintiff,**

v.

**Frank G. MORDENTE, Defendant.**

Bankruptcy No. 83–B–20288.
83 Adv. 6164.

United States Bankruptcy Court,
S.D. New York.

Dec. 28, 1983.

Cohen & Huttner, Valley Stream, N.Y., for debtor.

Pomeranz & Pomeranz, New York City, for plaintiff.

## DECISION ON OBJECTIONS TO DISCHARGE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, S–P Drug Co., Inc., a judgment creditor of the debtor, Frank G. Mordente, in the sum of $43,906.54, has filed a complaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) (fraudulent transfer within one year with intent to hinder, delay and defraud creditors) and § 727(a)(4) (knowingly and fraud-

ulently making false oaths). The debtor's answer denies the essential allegations in the complaint.

## FINDINGS OF FACT

1. On June 6, 1983, the debtor, Frank G. Mordente, filed with this court his voluntary petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.

2. Plaintiff, S–P Drug Co., Inc., a corporation organized pursuant to the laws of the State of New York, obtained a default judgment on August 26, 1982 in the sum of $43,906.54 against the debtor by reason of his personal guaranty and assumption of the obligations of a drug store that he had previously purchased from others.

3. The debtor is a pharmacist who is presently employed in this capacity by a large drug store chain. In January of 1981, the debtor desired to purchase a one-half interest in a drug store that was owned by two individuals. In order to finance this purchase, he asked his father for a loan of $10,000, with the promise that he would repay his father from the profits of the store. The debtor's father advanced the $10,000 to the debtor as requested. The debtor did not give his father a promissory note, nor is there anything in writing to evidence this loan.

4. In December of 1981, the debtor desired to purchase the other one-half interest in the drug store. Once again the debtor asked his father for another $10,000. This time the debtor told his father that he would give his father certain real estate jointly owned by the debtor and his wife in Delaware County, New York, if his father would give him $10,000 to purchase the other half interest in the drug store. This offer was framed in the form of a proposed exchange rather than a loan. The debtor's father then gave him the requested $10,000. This property was not the debtor's residence. He owns a one-family home in Nanuet, New York where he resides with his wife. The Delaware County property was purchased by the debtor in 1980 for $7700.

5. In March of 1982, at a time when the debtor's father had returned from a sojourn in Florida, the debtor prepared a contract, which he drew up himself, agreeing to convey the Delaware County property to the debtor's father and mother.

6. On August 6, 1982, the plaintiff commenced an action in the state court to recover under the debtor's personal guaranty of the obligations of the drug store he previously purchased. The debtor defaulted in answering the complaint with the result that the plaintiff obtained a judgment by default in the sum of $43,906.54.

7. On August 25, 1982, the debtor and his wife deeded the jointly owned Delaware County property, for which he had paid $7,700 in 1980, to the debtor's father and mother, in consideration for the $10,000 that the debtor's father advanced towards the purchase of the debtor's drug store. Thereafter, except for non-apportionment for the year 1982, the debtor's father paid the taxes, insurance and expenses pertaining to the transferred property.

8. There was no proof that the debtor was insolvent when he transferred the Delaware County property to his parents. He admitted that he might have been slow in paying his bills at that time because he had to wait for his business checks to clear, but that he was making payments and was not in arrears.

9. There was no evidence as to whether or not the Delaware County property was improved or vacant land, or for that matter, whether its value differed from the $7,700 that the debtor paid for the property in 1980.

10. Although the debtor's father testified that he intended to secure the $20,000 that he advanced to the debtor, the evidence points to an unsecured $10,000 advance originally, followed by a transfer of the Delaware property, costing $7,700 in exchange for the $10,000 second advance to the debtor by his father. The transfer of the property in August of 1982 was made in consideration for the $10,000 advanced to the debtor in December of 1981.

11. The plaintiff did not establish the existence of any extrinsic evidence to show that the transfer of this property by the debtor and his wife to his father and mother, after he received the second $10,000

advance, was made with actual intent to hinder, delay or defraud his creditors.

12. When the debtor filed with this court his Chapter 7 bankruptcy petition on June 6, 1983, he listed his interest by the entirety in the one-family home owned by the debtor and his wife in Nanuet, New York. The debtor's sworn schedules reflect that this house is valued at $80,000. The debtor testified that this value was based upon the amount for which the house was insured in the event of fire. The plaintiff maintains that this valuation is false because no value was ascribed for the lot, which would not burn in the event of fire. To support this point, the plaintiff's expert appraiser testified that the house and land would sell for approximately $99,000.

■ 13. The valuation of the debtor's house, in which he has an interest by the entirety with his wife, is a matter of opinion and not fact. Apart from the fact that only the debtor's interest in the house is of concern to the estate, the difference between the $80,000 value as listed in the debtor's schedules, and the $99,000 value proposed by the plaintiff does not amount to a materially false statement under oath.

14. In schedule B-2 of his bankruptcy schedules, the debtor listed an IRA endowment policy issued by the Metropolitan Life Insurance Co. and valued at $5000. During the Code § 341 meeting of creditors, the debtor stated that the policy had a zero value because he had withdrawn the proceeds in May of 1983 (one month before the filing of the petition on June 6, 1983) which he then deposited in his wife's checking account. As to this policy, the debtor testified without contradiction, that he wanted to borrow $3000 against the IRA policy in order to pay certain mortgage debts. However, he was informed that he had to withdraw the entire amount because he could not borrow a portion of the value. Accordingly, he withdrew the entire proceeds, which amounted to $8675.81, and deposited them in his wife's checking account. A little over $3000 of this sum was used to pay certain mortgage debts. The remaining funds, amounting to approximately $5600, remained in his wife's checking account which the debtor believed was referable to an IRA account when he filed his bankruptcy petition. Therefore, he mistakenly listed the IRA account with a $5000 value in his schedules. This mistake was brought to light when he candidly informed the bankruptcy trustee and his creditors at the Code § 341 meeting that the IRA account did not exist and that it should be valued at zero.

15. The debtor's liquidation of the IRA policy and the transfer of the proceeds amounting to $8675.81 to the debtor's wife's checking account was made for the purpose of paying secured creditors approximately $3000. The debtor did not then have a checking account nor was he a signatory on his wife's account. Therefore, the debtor's wife issued checks to the secured creditors. Although the debtor mistakenly regarded the remaining $5600 as attributable to his IRA policy (because he only wanted to borrow $3000 from the account), his wife actually held the $5600 in her checking account when the debtor filed his petition in bankruptcy. Therefore, instead of listing the $5600 as an asset held for the debtor by his wife, he chose instead to list the approximate sum of $5000 as an asset attributable to his former IRA policy. When questioned by the trustee in bankruptcy at the Code § 341 meeting of creditors, the debtor readily admitted what had happened with the IRA policy and that his wife continued to hold the $5600 that remained after she issued checks approximating $3000 to certain secured creditors.

■ 16. The foregoing facts do not sustain a charge that the debtor transferred the proceeds from the IRA policy to his wife with an actual intent to hinder, delay or defraud his creditors. Indeed, he intended to repay certain secured creditors as a result of this transfer. The balance remaining after such repayment was listed as an asset of the estate, although described incorrectly as attributable to the IRA policy. The information in the debtor's schedules was sufficient to permit the trustee in bankruptcy to inquire as to this asset and to learn the details as to the liquidation of the IRA policy and the transfer of the proceeds to the debtor's wife's checking account,

where $3000 was used to pay certain of the debtor's secured creditors. Accordingly, the plaintiff's allegation of a fraudulent transfer by reason of the IRA transaction is not sufficiently supported so as to bar the debtor's discharge.

■ 17. Moreover, the facts relating to the IRA policy do not support a finding that the debtor knowingly and fraudulently made a false oath when he listed a $5000 IRA policy in his sworn schedules. This was a mistake that was promptly rectified at the meeting of creditors, when the trustee in bankruptcy was informed as to the correct facts.

18. In response to paragraph 2(e) of the Statement of Affairs, which requires a specification of income "received" by the debtor from other sources within the last two years, the debtor listed, among other items, a $148 dividend received with respect to New York Life Insurance Policy No. 30–344–846. However, the debtor did not list the dividends that were earned in the years 1982 or 1983, nor did he list the policy as an asset in existence at the time he filed his Chapter 7 petition.

19. The debtor explained that he had borrowed fully against the New York Life Insurance policy and that it had no cash value. He was informed by the insurance company that the dividends would be applied to the loan or to the premiums that were due thereunder so as to keep the policy alive. Therefore, the debtor did not list any dividends as having been "received" in 1982 or 1983 because he concluded that he did not "receive" any dividends.

■ 20. The existence of the New York Life Insurance policy was not omitted from the documentation accompanying the debtor's petition in bankruptcy, nor did the debtor conceal the fact that this policy earned dividends. The debtor's interpretation (or his attorney's interpretation) of how to treat the facts concerning the New York Life Insurance policy was not an example of lucid disclosure. However, the evidence is insufficient to establish that the debtor knowingly and fraudulently intended to conceal facts from his creditors so as to constitute the making of a false oath when he swore to the information contained in his petition in bankruptcy and supporting papers.

## THE TRANSFER TO THE DEBTOR'S PARENTS

■ The transfer of the debtor's interest by the entirety in property in Delaware County to the debtor's parents on the eve of the entry of the plaintiff's judgment against the debtor was not shown to have been made with actual intent to hinder, delay or defraud creditors, as expressed in 11 U.S.C. § 727(a). The debtor received from his father $10,000 in exchange for property that cost the debtor $7,700 two years earlier. Unlike the situation in *Sacklow v. Vecchione,* 407 F.Supp. 609 (E.D.N.Y. 1976), which is cited by the plaintiff in support of its position, the monies paid to the debtor for the property were not funds originally given by the debtor to the purchaser to make the purchase. Here, the debtor's father advanced his own $10,000 to the debtor and thereafter treated the property as his own. There was no credible evidence to support a finding that the debtor retained a secret equitable interest in the transferred property, as in *In re Gugliada,* 20 B.R. 524, 534 (Bkrtcy.S.D.N.Y.1982). Although the transferee was a member of the debtor's family, so as to call into play the concept of "badges of fraud," *Salomon v. Kaiser,* 722 F.2d 1574 at 1582 (2d Cir.1983); *In re Freudmann,* 362 F.Supp. 429, 433 (S.D. N.Y.1973), *aff'd,* 495 F.2d 816 (2d Cir.), *cert. denied,* 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974), the $10,000 payment that the debtor received exceeded the $7,700 cost of the property. There was thus no lack or inadequacy of consideration.

## THE VALUATION OF THE DEBTOR'S RESIDENCE

That the debtor listed in his schedules that his residence was worth $80,000, whereas the plaintiff's expert testified that it was worth $99,000, does not mean that the debtor made a false oath. There was no proof that the debtor was an expert in the valuation of property or that his opinion should be treated as a fact. The debtor's assessment of the property's value, based

upon its insured risk, amounted to no more than an educated guess. It was not intended to constitute an assurance of factual accuracy and was merely an expression of opinion or belief concerning a matter not susceptible of exact knowledge. *See Fifty Associates v. Prudential Insurance Co. of America,* 450 F.2d 1007, 1010–11 (9th Cir. 1971).

### THE IRA ENDOWMENT POLICY

The debtor mistakenly valued the terminated IRA policy at $5,000, whereas the value should have been zero. The $5,600 which was attributable to the IRA policy was deposited in the debtor's wife's checking account, which the debtor explained to the trustee at the meeting of creditors. This mistake in properly scheduling an asset of the estate does not reflect an attempt to conceal property. Instead, it appears that the debtor did not understand how to schedule the balance received from the terminated IRA policy. This discrepancy can be ascribed more to confusion than to any conscious fraudulent design. *See In re Tabibian,* 289 F.2d 793, 796 (2d Cir.1961).

### THE UNLISTED INSURANCE DIVIDENDS

Although the debtor referred to his New York Life Insurance policy, against which he had fully borrowed the cash value, he did not list the dividends as having been "received" within the last two years nor did he list the valueless policy as an asset. Factually, he did not receive the $148 dividends in 1982 or 1983 because they were applied against the premiums due in order to keep the policy alive. The debtor did not attempt to conceal these facts from his creditors. In any event, he did not receive any dividends and the policy was worthless to the creditors. "A bankrupt is not guilty of making a false oath when he omits from his sworn schedule securities which are absolutely worthless." *In re McCrea,* 161 F. 246, 249 (2d Cir.1908).

### CONCLUSIONS OF LAW

1. The plaintiff has failed to sustain its burden, imposed under Bankruptcy Rule 4005, of proving that the debtor transferred or concealed his interest in property, located in Delaware County, New York, with intent to hinder, delay or defraud his creditors, as proscribed in 11 U.S.C. § 727(a)(2)(A).

2. The plaintiff has failed to sustain its burden, imposed under Bankruptcy Rule 4005, of proving that the debtor knowingly and fraudulently made false statements in his petition within the meaning of 11 U.S.C. § 727(a)(4)(A).

3. The complaint seeking a denial of the debtor's discharge is dismissed.

SUBMIT ORDER on notice.