In re. William A. LATORRE, Debtor.

Barry A. COHEN, Plaintiff,

v.

William A. LATORRE, Defendant.

Bankruptcy No. 92–8361–8P7.
Adv. No. 92–750.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 2, 1994.

David Maney, Tampa, FL, for plaintiff.

Charles Medearis, Tampa, FL, for debtor/defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Complaint challenging the dischargeability of a debt allegedly owed by William A. Latorre (Debtor) to Barry A. Cohen (Plaintiff), the Debtor's former attorney. In addition, the Plaintiff challenges the Debtor's right to a general dis-

charge based on § 727(a)(4). In Count I of his Complaint, the Plaintiff alleged that the Debtor obtained legal services from the Plaintiff by employing false representation regarding his ability to pay legal fees owed to the Plaintiff. Based on this allegation, the Plaintiff contends that the amount claimed to be due to him by the Debtor shall be excepted from the Debtor's discharge pursuant to § 523(a)(2)(A). In Count II, the Plaintiff alleged that the Debtor made false statements under oath regarding the value of his claim for reimbursement from the County of Pinellas of costs incurred by him in connection with a defense of criminal charges. Based on this, according to the Plaintiff, the Debtor should be denied his general discharge pursuant to § 727(a)(4)(A). The claim in Count III of the Complaint is also based on § 727(a)(4)(A) charging that the Debtor committed false oath by understating the value of his interest in the Latorre Chiropractic Center, P.A., in which he was the sole stockholder. At the end of the trial, this Court dismissed the claim set forth in Count II which left the claims set forth in Counts I and III to be tried. The relevant facts as established at the duly noticed final evidentiary hearing are as follows:

On May 27, 1989, the Debtor, a chiropractic physician, was involved in a boating accident which resulted in the death of four teenagers. The Plaintiff, a noted criminal attorney, was immediately called by the Debtor to the accident scene because he was apprehensive of a potential criminal liability. This apprehension was not unfounded and was a matter of fact, shortly thereafter, he was indicted and charged with involuntary manslaughter in the Circuit Court of Pinellas County.

The record reveals that in August of 1989, the Debtor transferred to his wife, Wendy Jo Latorre, his interest in waterfront real property; an office building occupied by the Debtor's chiropractic clinic, and his homestead, all of which had previously been owned by him and his wife as tenants by the entireties.

On October 6, 1989, the Debtor executed an Agreement of Representation (Agreement), in which the Plaintiff agreed to represent the Debtor through his criminal trial (Plaintiff's Exh. 58). According to the Agreement, the Debtor agreed to pay a nonrefundable engagement fee to the Plaintiff in the amount of $500,000.00, due immediately and that if time expended exceeded the engagement fee then the Debtor would be billed monthly for his services on an hourly basis and the costs would also be paid by the Debtor. In the Agreement the Debtor acknowledged that at the time the Agreement was executed he already had an outstanding balance for fees in the amount of $118,306.25 and $76,191.15 for costs, a total of $194,497.40. Under the Agreement, $200,000.00 was due and payable to the Plaintiff in thirty days from the date of execution of the Agreement and the Debtor would be billed at a rate of $60 to $380 per hour for his services. The Agreement also provided that if the Debtor failed to comply with payment terms the Plaintiff reserved the right to withdraw from representation of the Debtor.

Prior to the trial, the Debtor paid the Plaintiff $846,436.00. The Debtor obtained the funds by cashing in his pension plan, by borrowing $600,000.00 from a bank, out of which $400,000.00 was paid to the Plaintiff. Even though the Debtor was refused this loan initially, the Plaintiff persuaded the Bank to grant the Debtor's request for the loan by convincing the Bank that the Debtor would prevail in the criminal proceedings. This loan was secured by all of the Debtor's assets, including all his stock in his Professional Association. At the time the Debtor obtained the loan, the Plaintiff's attorney stated in a letter to the attorney representing the Debtor in the civil suit which followed the criminal case, that the outstanding bill at that point was about $369,000.00. (Plaintiff's Exh. 14). The trial began November 5, 1990 and on December 11, 1990, the jury acquitted the Debtor of all charges.

In March of 1991, the Plaintiff presented the Debtor a bill for additional legal fees in excess of $900,000.00. Until this point, the Debtor claims he did not know the actual balance due the Plaintiff. Although shocked by the amount, the Debtor did not refuse to pay the balance. However, the Debtor did seek a judicial determination of the amount

he owed. Negotiations followed but to no avail and ultimately the matter resulted in the commencement of litigation between the parties.

On June 19, 1992, the Debtor filed his Petition for Relief under Chapter 7 of the Bankruptcy Code, and filed his Schedules of Assets and Liabilities in connection with the Petition. In his Schedule B, the Debtor listed as one of his assets the stock in the Latorre Chiropractic Center, P.A., valued at $350,000.00. The total face amount of the receivables due to the P.A. just prior to the commencement of the case was about $1,800,-000.00.

In due course the Trustee filed a Motion and sought to sell the estate's interest in the P.A. to the Debtor for $10,000.00. The Plaintiff objected to the proposed sale. This Court sustained the objection because the advertisement for the proposed sale was insufficient. After re-advertising the sale to all the local chiropractors, the trustee having failed to receive any acceptable bids, sold the Debtor's stock in the P.A. for $6,721.00, the highest price offered, back to the Debtor. Basically these are the facts relevant to the remaining claims based on § 523(a)(2)(A) and the other on § 727(a)(4) of the Bankruptcy Code.

■■■ The Claim in Count I is based on § 523(a)(2)(A) which provides in pertinent part as follows:

**§ 523. Exceptions to Discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

The provisions dealing with discharge are remedial and it is generally recognized that they must be liberally construed in favor of the Debtor in anticipation of the "fresh start" concept established by the Supreme Court in *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113,

27 L.Ed.2d 124 (1970). It is equally true that the burden of proof to sustain a claim of nondischargeability based upon § 523(a)(2)(4)(6) of the Bankruptcy Code is placed upon the party seeking to except the debt from discharge. However and the standard is no longer the standard of clear and convincing but by a mere preponderance of the evidence. *Grogan v. Garner* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To prevail on a claim of nondischargeability under § 523(a)(2)(A), the plaintiff must establish with the requisite degree of proof that: (1) the debtor made a representation; (2) at the time he made the representation, the debtor knew the representation to be false or knew he was incapable of fulfilling the representation; (3) the debtor made the representation with the intent to deceive; (4) the plaintiff reasonably relied on the statement; and (5) the plaintiff sustained the alleged loss as a proximate result of the representations having been made.

■■ This Court is satisfied that the Plaintiff has failed to meet his burden of proof to show either that the Debtor knew he was incapable of fulfilling his promise to pay the Plaintiff's attorney fees or he did not intend to pay the same. Considering the totality of the evidence, this Court is satisfied that the proof required of the Plaintiff to prevail on this claim is inadequate and is tantamount to nothing more than the failure of the Debtor to pay an obligation, which is a common feature of all cases filed under Title 11 with some rare exceptions.

The only representation made by the Debtor to the Plaintiff is the Debtor's implied promise that he was or would be able to pay for the services. This Court is satisfied that both at the time the Debtor summoned the Plaintiff on the day of the accident and at the time the parties entered into the Agreement, the Debtor had every honest intention to pay the Plaintiff for services rendered and to be rendered. The intention that the Debtor would be able to pay is evidenced by the fact that the Debtor did in fact pay the Plaintiff over $800,000.00 and by the fact that the Debtor borrowed a substantial amount of money to pay the Plaintiff, pledging all of his assets as collateral to secure the promissory

note. Based on the foregoing, the Plaintiff failed to establish a viable claim under § 523(a)(2)(A).

The Plaintiff also alleged in this Count that the Debtor entered into a scheme with his wife for the purpose of defrauding the Plaintiff by transferring his assets to his wife, which assets he held jointly with his wife. Even a cursory analysis of this contention leaves no doubt that this claim is totally irrelevant to a claim of nondischargeability under this section. Moreover even assuming without conceding that by some strained interpretation of this Section, the Plaintiff might make out a viable claim under § 523(a)(2)(A), under the facts of this case that proposition is totally lacking in any evidentiary support for the following reasons:

The properties transferred by the Debtor to his wife were owned by him and his wife jointly as tenants by the entireties. This Plaintiff never had a claim against Mrs. Latorre, thus it is evident that he could not have reached these properties even before the transfer because by virtue of § 522(b)(2)(B) any interest in property in which a Debtor had before the commencement of a case as interest as a tenant by the entireties such interest is excepted from process under applicable non-bankruptcy law, in this instance the common law of the State of Florida.

▪ The claim in Count I is based on § 727(a)(4)(A) and based on the allegation that the Debtor knowingly fraudulently made a false oath in connection with this case, therefore, is not entitled to a general bankruptcy discharge.

This Section in relevant part provides as follows:

### § 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account ...

In order to prevail on an objection to discharge pursuant to § 727(a)(4)(A), the challenging party must establish that the debtor knowingly and fraudulently made a false oath and that this oath pertained to a material fact. *In re Ingersoll*, 124 B.R. 116 (Bankr. M.D.Fla.1991).

▪ The Plaintiff asserts that the Debtor knowingly understated in his Schedule B the value of his stock in the Latorre Chiropractic Center, P.A. (P.A.) This Court is satisfied that the Plaintiff has failed to meet his burden of proof to establish that the Debtor knowingly made a false oath on his schedule. Ordinarily, the real value of the stock in a closely held professional corporation, when there is no market for the stock, is determined and directly connected with the income earning potential of the P.A. Thus, the value of the stock depends in large measure on the individual who is rendering the services and the loyalty of the patients to the individual. This factor is equally of importance on the value of the accounts receivable of the P.A. which was in this instance the largest asset of the P.A. While a part of the receivables which are due from insurance companies might be collected, the collectibility of non-insurance receivables is doubtful if it is not collected by the person who rendered the service. The value of the patient list is equally closely tied to the person who rendered the services and would be largely dependent on patient loyalty. It is doubtful that if a patient list was sold to another chiropractor the patients will remain patients of the new chiropractor rather than follow the Debtor, who had an absolute legal right to open a new chiropractic clinic in the same neighborhood.

In a Chapter 7 case the trustee must promptly liquidate the nonexempt assets of the estate. Accordingly, the only value assignable to this asset must be based upon the amount the trustee can actually receive in exchange for the asset, i.e. the liquidation value. After an attempt to sell the P.A. by advertising the sale to the local chiropractors, the trustee in this case had no choice but to sell the P.A. for $6,721.00 to the highest bidder, the Debtor, notwithstanding that the Debtor himself scheduled the value of the stock in the amount of $350,000.00 and notwithstanding the Plaintiff's assertion that the asset is worth over a million dollars.

This Court is satisfied that even assuming that the Plaintiff is correct that the Debtor understated the value of his stock, such understatement would still not be grounds for denial of discharge because the Plaintiff has failed to produce any evidence that the Debtor knowingly understated that value. Moreover, the asset itself was properly scheduled and was disclosed to the trustee who in turn was afforded the opportunity to make an independent determination of the value of the P.A. stock. *In re Blum*, 41 B.R. 816 (Bankr.S.D.Fla.1984). The Debtor's assertion that the P.A. was valued at $350,000.00 was based on the Debtor's opinion which resulted at least in part from the opinion of the P.A.'s bookkeeper. The Debtor's assessment of that value is no more than an educated guess based on the information available to him at the time, and was merely an expression of the Debtor's belief concerning a matter not susceptible of exact knowledge. *In re Mordente*, 35 B.R. 973 (Bankr.S.D.N.Y. 1983).

Based upon the foregoing, this Court is satisfied that the Plaintiff's claim cannot be sustained and the Complaint should be dismissed.

A separate final judgment will be entered in accordance with these findings.